EMIL GEPPELT, *Appellee,* v. THE MIDDLE WEST STONE COMPANY et al., *Appellees;* THE ALLIS-CHALMERS COMPANY, Interpleader, *Appellant.*

No. 18,388.

SYLLABUS BY THE COURT.

1. ACTIONS—*Involving Liens on Same Property—Properly Consolidated.* The proceedings following the consolidation of two actions involving the validity and priority of mechanic's liens and other claims upon the same property examined and held to be without prejudice to the rights of the appellant.

2. MECHANIC'S LIEN—*Statement Therefor Not Invalid.* A mechanic's-lien statement showing all debit and credit items of the account for material furnished, and stating a balance due in a certain sum, is not invalid because in another portion of the statement a larger sum is claimed, "less freight," the amount of which is not specified.

3. —— *Same.* It is proper in a mechanic's-lien statement to designate the person procuring material for the improvement of his real estate as "owner," although he has only a leasehold estate in the land.

4. —— *When Time for Perfecting Lien Begins to Run.* Where a material-man's mechanic's-lien statement shows both the date of the order and the date of the invoice of the material to the owner, the time allowed for perfecting the lien will be computed from the latter date.

5. MATERIAL-MAN'S LIEN—*Not Defeated by Contract for Cash Sale—Nor by Reservation of Title.* Where material has been furnished for the erection of improvements on real estate and has been used for that purpose, the right to a mechanic's lien is not defeated because the material was sold for cash and the title was reserved until the price should be paid.

6. ———— *Preferred Claim for· Labor—When Not Defeated.* The preferred claim of a laborer for wages earned within six months immediately preceding the appointment of a receiver for a corporation is not lost because not satisfied out of the first proceeds coming into the hands of the receiver, as the statute directs.

7. CONTRACT—*Reserving Title in Vendor—No Effect Until Contract is Filed for Record.* Section 5237 of the General Statutes of 1909 suspends the force of a provision in a contract of sale of personal property reserving title in the vendor, and renders the sale absolute so far as innocent purchasers and creditors of the vendee are concerned until the contract is filed for record.

8. MACHINERY—*Not Attached to Realty—Not Subject to Mechanic's Lien.* Machinery sold under an unrecorded contract reserving title in the seller does not become subject to mechanics' liens filed upon the property of the purchaser unless it has been attached to and has become a part of the realty.

9. NEW TRIAL—*On Single Question of Fact.* Under the circumstances stated in the opinion, a new trial is ordered for the determination of a single fact upon which the proper distribution of a fund of money depends.


Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed October 11, 1913. Modified.

*Travis Morse, G. E. Pees,* both of Iola, *Gardiner Lathrop, Thomas R. Morrow, John M. Fox, Samuel W. Moore,* and *T. H. Reynolds,* all of Kansas City, Mo., for the appellant.

*R. H. Bennett, R. E. Cullison,* and *Frank R. Forrest,* all of Iola, for appellees The Inland Steel Company *et al.*

*Charles H. Apt,* and *Frederick G. Apt,* both of Iola, for appellee George C. Dalgarno.

*T. C. Taylor,* of Iola, for appellee The Structural Steel Company.

*H. A. Ewing, S. A. Gard,* and *G. R. Gard,* all of Iola, for appellee Paul Klein.

The opinion of the court was delivered by

BURCH, J.: The Allis-Chalmers Company sold two stone crushers to the Middle West Stone Company in April, 1910, under a contract reserving title in the vendor until the price should be paid. The crushers were delivered in August, 1910, but the title instrument was not filed until February 15, 1911. Mechanic's liens were filed upon the property of the stone company as follows:

R. E. Laidley, September 28, 1910;

The Kansas City Structural Steel Company, December 14, 1910;

The Inland Steel Company, January 16, 1911;

Paul Klein, February 7, 1911;

George C. Dalgarno, July 17, 1911.

In litigation over the stone company's affairs these liens were adjudged to be prior to the Allis-Chalmers Company's claim for the unpaid price of the crushers. The property of the stone company, including the crushers in controversy, has been sold under stipulation, and the contest is over the proceeds of the sale, which were insufficient to satisfy the mechanic's liens. The Allis-Chalmers Company appeals.

The appellant claims that it did not have a fair opportunity to contest the liens which have been mentioned on account of the procedure adopted by the trial court.

Emil Geppelt sued the stone company for wages, obtained judgment, and levied an execution upon specific property belonging to the stone company, which is no longer in controversy. On August 15, 1911, a receiver was appointed for the stone company, who duly qualified and took possession of its property, including the crushers. All creditors of the stone company and all claimants of the property in the receiver's hands were given leave to interplead. Under this order the appellant filed an interplea, which was substantially

a petition in replevin for the crushers. Formal inter-
pleas were also filed by the Kansas City Structural
Steel Company, Klein, and Dalgarno. In a separate
action against the stone company brought by the In-
land Steel Company mechanic's liens were established
by the Inland Steel Company and by Klein, Laidley,
and the Kansas City Structural Steel Company, but all
questions of priority were reserved for future decision.
Afterwards this action was consolidated with the Gep-
pelt action for the purpose of establishing priorities
and for the purpose of distributing the proceeds de-
rived from the sale of the stone company's property.
Formal interpleas were not filed by the Inland Steel
Company and Laidley, who rested upon the pleadings
they had previously filed in the separate suit. The con-
solidated case was brought on for trial immediately
after the order of consolidation was made, and the
validity and priority of the liens of the parties to the
separate suit were practically determined from the
pleadings in that action, including the exhibits at-
tached to such pleadings. The specific errors assigned
on this proceeding are, want of opportunity to frame
proper issues respecting the validity and priority of
these liens, and want of definite issues on those
subjects.

The abstract does not disclose that the objections
just stated were pressed upon the attention of the trial
court. The order of consolidation was manifestly
proper. The pleadings in the two cases apprised the
court and the litigants fully of the precise nature of
the various claims upon the property of the stone com-
pany, and the only grounds of the appellant's motion
for a new trial were that the findings and decision of
the trial court were unsupported by the evidence and
were contrary to law. It was not suggested that the
appellant had been cut off from making defenses to
the claims of its adversaries, and all the objections
now urged against the validity and priority of the

various liens allowed by the trial court are reviewable here on the record already made. The result is that the appellant is not in a position to ask for a new trial upon the grounds now urged, has suffered no prejudice to its substantial rights because of the course pursued, and a new trial would serve no beneficial purpose.

Error is assigned upon the allowance of each of the liens referred to.

Laidley's lien is contested on the ground that the amount claimed in the lien statement is uncertain. The statement begins as follows: "Amount claimed, $942.76 less freight." The deductions to be allowed on account of freight are not specified, but the items of the account showing all debits and credits are given, resulting in what is stated to be the "balance due" in the sum of $669.41.

The lien of the Kansas City Structural Steel Company is contested because the lien statement described the stone company as "owner" when it merely had a leasehold estate in the property improved. It is not necessary to specify in a lien statement the precise nature of the estate in land possessed by the person procuring labor or material for its improvement. The lien attaches to his interest, whatever that may be, and as to that interest he is properly described as owner.

The lien of the Inland Steel Company is contested on the ground that the lien statement was not filed within the statutory time. To arrive at this conclusion it is necessary to compute the time from the date of the order given to the claimant, which happens to appear in the statement, instead of from the date the material was furnished, as shown by the invoice to the stone company.

Klein's lien is contested because the lien statement shows that the material was sold for cash and that title was reserved until the price was paid. The statement shows, however, that the material was furnished for the erection of improvements on the property of

the stone company and that such material to the amount claimed was used by the stone company for such purpose. This satisfies the statute.

Dalgarno was a common laborer about the stone company's plant, who did whatever he was called upon to do. At some time he helped set up stone crushers. He cleaned boilers. He was a watchman part of the time the plant was idle, and to this extent his services inured to the benefit of the appellant. Occasionally he did some painting, and when the receiver took charge he did some work gathering up scattered articles and putting them into a shed. Of all the parties to the litigation he can least afford to lose his wages, but his mechanic's lien must be disallowed, because the court is wholly unable to bring his claim within the terms of the mechanic's-lien statute. He is, however, entitled to a laborer's preference for eighty-four days' work, at one dollar and sixty-five cents per day, for labor performed within six months immediately preceding the appointment of the receiver. (Gen. Stat. 1909, § 4660.) This preferred claim should have been paid first from the funds which came into the receiver's hands, but the preference is not lost because that was not done.

The plaintiff's title contract was absolutely void as to all the creditors whose claims have been discussed, their liens having attached before the contract was recorded. (Gen. Stat. 1909, § 5237; *Paul v. Lingenfelter,* 89 Kan. 871, 132 Pac. 1179.) The plaintiff argues that the contract of sale was good between the parties to it; that the contract did in fact withhold title from the vendee; that the vendee obtained no title, whether the contract were recorded or unrecorded; that the title of lienors could not rise higher than the title of the vendee, who had none; and consequently that there was no ownership in the vendee of the crushers upon which mechanic's liens could be predicated. This argument merely flies in the face of the statute, which suspends the force of the provision in the contract of sale reserv-

ing title in the vendor, and so renders the sale absolute so far as innocent purchasers and creditors are concerned until the contract is placed on record.

The pleadings and proof on the part of the appellant disclosed a sale and delivery of personal property to the stone company, the title to which was reserved in the vendor. Before mechanic's liens upon such property could become effective it was necessary that it should become a part of the real estate which it was designed to improve. There is no direct proof, or even indirect proof of a substantial character, that this ever took place. The findings of the trial court are silent upon the subject. It is stoutly contended on one side that the crushers never were actually attached to the realty, and on the other side that they were. The issue does not seem to have been tried or determined.

The judgment of the district court awarding liens against the real estate of the stone company is affirmed, except as to Dalgarno, and as to him the judgment is modified as indicated. A new trial is awarded of the single issue just discussed, and the district court is directed to distribute the fund in the hands of the receiver according to the result of that trial.