BROWN et al. v. MASSACHUSETTS HIDE CORPORATION.

(Circuit Court of Appeals, First Circuit. January 7, 1915.)

No. 1052.

1. CORPORATIONS (§ 553*)—INSOLVENCY AND RECEIVER—RIGHTS OF PARTIES.

In proceedings in insolvency to liquidate the affairs of a corporation, the rights of all the parties concerned are fixed as of the time of the appointment of the receiver, and all the various equities are to be determined accordingly.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2201–2216; Dec. Dig. § 553.*]

2. RECEIVERS (§ 77*)—LIEN ON PROPERTY—EXTENT.

Where insolvent imported hides on a credit extended by bankers, the contract providing that the title and right to possession should be in the bankers until any indebtedness or liability in their favor should have been fully paid, held, that such credit agreement did not limit the bankers to a lien on the proceeds of each importation for the amount of the credit utilized for that shipment, but that they were entitled to charge, on the importers becoming insolvent, as against a balance in the bankers' hands

---

from several shipments, advances made under the credit on other ship-
ments, though they were not due at that time.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 91, 138–144;
Dec. Dig. § 77.*]

3. RECEIVERS (§ 77*) — LIENS AND PRIORITY — SALE OF PLEDGED AND NON-
PLEDGED PROPERTY—RIGHT TO PROCEEDS.

Where leather belonging to bankers under an importers' credit agree-
ment was sold by the importers, together with other leather not subject to
the credit contract, and it was impossible to identify the proceeds of each,
the bankers, under the doctrine of subrogation, were entitled to enforce
their claim against the entire fund.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 91, 138–144;
Dec. Dig. § 77.*]

Appeal from the District Court of the United States for the District
of Massachusetts; Geo. H. Bingham, Judge.

Suit by Jeremiah Smith, Jr., as receiver of the Massachusetts Hide
Corporation, against Waldron B. Brown and others. From a decree
denying in part defendants' claim to certain pledged property, they
appeal. Reversed and remanded, with directions.

Joseph B. Warner, of Boston, Mass. (Warner, Warner & Stackpole,
of Boston, Mass., on the brief), for appellants.

Howard Stockton, Jr., of Boston, Mass., for appellee.

Before PUTNAM and DODGE, Circuit Judges, and MORTON,
District Judge.

PUTNAM, Circuit Judge. The Massachusetts Hide Corporation,
and its assets, were put into the hands of Jeremiah Smith, Jr., as re-
ceiver, by a decree of the Circuit Court for the·District of Massachu-
setts, on September 13, 1910. Whatever the authority for or purpose
of the entry of that decree, so far as the present proceedings are con-
cerned, the appointment and the results thereof are to be treated as
insolvency liquidation, and the rights of the parties are to be governed
by the equitable principles which adhere to general proceedings in in-
solvency and bankruptcy, and all titles and liens, with reference to the
property involved are to be adjusted on that basis. The Massachusetts
Hide Corporation had been, and was at the time of the appointment
of the receiver, engaged in importing hides, and selling them, in the
usual course of business of an importer. It procured its credit for the
purchase of hides in foreign parts partly from Brown Bros. & Co.,
who are the appellants interested in this proceeding. The documen-
tary obligations incurred by the corporation to Brown Bros. & Co.,
through which these letters of credit were obtained, stipulated for the
repayment of advances, with interest at the rate of 5 per cent. per an-
num, "or at the current rate if it be above that," with a commission of
one-half of 1 per cent., increasing by graduated steps to 1½ per cent.

Effacing for all the practical purposes of these transactions Brown,
Shipley & Co., of London, who are the foreign branch, or house, of
Brown Bros. & Co., who are to be regarded as identical therewith, each
of the obligations incurred by the Massachusetts Hide Corporation as

purchaser of letters of credit from Brown Bros. & Co. contained the following provision:

"And          hereby recognize and admit the ownership of Brown, Shipley & Co. in, and their right and that of Brown Bros. & Co., to the possession and disposal of, all goods and the proceeds thereof, for which Brown, Shipley & Co. may enter into any engagements in virtue of this credit, as also to the possession of all bills of lading for and policies of insurance on such goods, until such time as any indebtedness or liability existing as against          in favor of Brown, Shipley & Co., or Brown Bros. & Co., under the said credit or otherwise, shall have been fully paid up and discharged. And in the event of either of them hereafter intrusting said goods to          for the purpose of sale or otherwise,          hereby consent that their right to repossess themselves of the same or any proceeds thereof may be exercised at their discretion. Any proceeds of said goods coming into their hands are to be applied against the expenses of Brown, Shipley & Co., under this credit, or against any other indebtedness of          to them or to Brown Bros. & Co., including all expenses incurred by either of them, and commission of sale and guaranty.

"This obligation is to continue in force, and to be applicable to all transactions, notwithstanding any change in the individuals composing the respective firms, parties to or concerned in this contract, or either of them, or in that of the user of this credit, whether such change shall arise from the accession of one or more new parties, or from the death or secession of any partner or partners."

The various credits received, and the obligations accompanying the same, were numerous, and succeeded or overlapped each other. The transactions permitted sales by the Massachusetts Hide Corporation of various importations from time to time, and the pledging of the goods imported to commission merchants or others; so that, after such sales or pledges, the equities which belonged to Brown Bros. & Co. were represented by the buyer's obligations in the hands of the Massachusetts Hide Corporation, and by the balances of values in excess of what may have been advanced by purchasers or the commission merchants.

In connection with the commencement of this litigation, all the remaining assets of the Massachusetts Hide Corporation which had been obtained by importations financed in the manner we have pointed out, and all the proceeds, or remnants thereof in excess of the claims of purchasers or commission merchants, arising in the manner we have pointed out, had been gathered together and liquidated, and the results thereof deposited by substitution in the hands of Brown Bros. & Co. as stakeholders, to stand in lieu of the property from which those amounts were gathered together, and this litigation is over the sums thus secured.

[1, 2] In accordance with the settled rules of insolvency proceedings involving general liquidation in insolvency, the rights of all the parties concerned here were fixed as of the time of the appointment of the receiver, and all the various equities are to be determined accordingly. Williams' Bankruptcy Practice (9th Ed.) 211, and sequence: This rule has been applied in full force in Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845, in Zartman v. First National Bank, 216 U. S. 134, 30 Sup. Ct. 368, 54 L. Ed. 418, and in other familiar cases. The principal question in this case arises from the fact that the outstanding relations were in very different phases at the time the receiver was appointed, especially that there were outstanding obligations to Brown Bros. & Co. which had not been met,

and also other obligations for which payment had been fully made, leaving balances of assets on hand, which balances Brown Bros. & Co. claim were applicable to the unpaid amounts of the obligations to them. The main question thus involved was passed on by the Supreme Court of Connecticut in the New Haven Wire Company Cases, 57 Conn. 352, 18 Atl. 266, 5 L. R. A. 300. The court there is quoted as using the following language, at 57 Conn. 391, 18 Atl. 273 (5 L. R. A. 300):

"It was the understanding and intention of all parties to these agreements that whenever the absolute title to a particular lot of rods so delivered upon conditions should be necessary to the wire company for the profitable conduct of its business, it should then be possible to it to obtain such title; to obtain it, if need be, contrary to the will of the applicants by a sufficient tender. And as it was the expectation of all parties that importation and conditional sales and deliveries would succeed each other to an indefinite point in the future, and that for these an overlapping succession of acceptances would come into existence, extending to a constantly receding date, it is not within the reasonable interpretation of the contract to say that it contemplated the burdening of each lot of rods with this accumulating indebtedness; nor to say that the applicants required from the wire company the payment of acceptances before maturity as a condition precedent to obtaining title to rods which it had paid for. It is rather to be interpreted as permitting it to obtain such absolute title by paying for the rods, and by paying in addition such other indebtedness from it to them as should then be due."

The above is a very plausible view, and might well have been acceded to under many circumstances. The questions, however, are strictly commercial, involving international transactions and complex conditions, as to which local views are very ineffectual. At any rate, the language of the contracts here is so positive and clear that, as we view it, it cannot be overcome by general considerations such as were urged by the Supreme Court of Connecticut, as eminent as that court may be. In view of the very complex conditions and of the many contingencies to which the business was subject, it seems to us proper to hold that the parties had the right to protect themselves by whatever provisions for emergencies they deemed proper to resort to. Therefore we are compelled to support Brown Bros. & Co. in maintaining the rights to which the language adopted by them apparently gives them a clear title. If this involves any embarrassment of the kind referred to by the Supreme Court of Connecticut, it is one of the parties' own selection, plainly and deliberately entered into. The transactions were evidently done on so close a margin, and the Massachusetts Hide Corporation was given so free a hand in dealing with the business in accordance with the ordinary emergencies of the situation, that Brown Bros. & Co. are entitled to be fully supported in whatever provisions they stipulated for. Commercial transactions of this character need broad support and are entitled to receive it. This solves the proposition that the liens claimed by Brown Bros. & Co. are to be supported in whatever may be the conditions of maturity of various obligations in which they are or may be interested.

This leaves us to consider further only certain conditions with reference to which Brown Bros. & Co. claim support from the doctrines of subrogation, and for the reasons we have stated the effect is that, under these doctrines as applied to insolvency or bankrupt administration of

assets, the rights of the parties are often crystallized at specific periods, independently of any action of the parties, so far as they can be crystallized without prejudice to intermediate accruing interests of innocent parties. We know of no such intermediate accruing interests here involved.

On this branch of the case the question relates to the rights of parties who have been placed in the relation of suretyship, or its equivalent, by implication, to be subrogated by the application of property to which no one has any specific right to the contrary. This right of subrogation is sometimes self-efficient, and may operate without the assistance of any conscious action. The broad principles of the doctrines of subrogation were sufficiently explained for this case by this court in November, 1911, in Merchants' & Miners' Transp. Co. v. Robinson-Baxter Towing Co., 191 Fed. 769, 772, 113 C. C. A. 427, and sequence 194 Fed. 361, 114 C. C. A. 321; 225 U. S. 704, 32 Sup. Ct. 837, 56 L. Ed. 1265. The case there cited of Wager v. Providence Insurance Co., 150 U. S. 99, 14 Sup. Ct. 55, 37 L. Ed. 1013, demonstrates that these doctrines may rest less on the conscious action of the parties concerned than on the facts as they exist, provided especially that the parties concerned are not innocent sufferers having antagonistic equities.

[3] As incidental to the application of the doctrines of subrogation, the Massachusetts Hide Corporation had consigned some goods purchased on the strength of letters of credit obtained from Brown Bros & Co., with other goods obtained otherwise, with the consequent result that some of the goods of each class had been disposed of, subject to the claim of Brown Bros. & Co. now made that the proceeds of all the same goods should be applied in exonerating the goods purchased on the credit of Brown Bros. & Co. so far as necessary. It is now said that the sales of these goods are so intermingled that they cannot be thoroughly traced, nor the proceeds thereof particularly identified; but the report of the master states with reference to these mixed accounts as follows:

"I do find, however, that the balances paid over by the several consignees are identified as coming solely from two possible alternative sources and no others, and the identical moneys represented, in whole or in part, either

"(a) Proceeds of leather imported under letters of credit issued by Brown Bros. & Co.; or

"(b) Proceeds of other leather on which the consignees had a lien for the same debt, and in which no one except the corporation, or the receiver representing the rights of the corporation, had any title or interest, either at the date of the receivership or at the date of final liquidation of the consignees' claims for advances," etc.

The findings of the master in these respects apparently are not disputed. Consequently, on those facts he ruled that Brown Bros. & Co. are entitled to these balances, with a single exception of a specific amount of $759.21 named as disallowed by the master, which is not disputed. As there were no intervening equities, and as the right of Brown Bros. & Co. to be subrogated does not depend on these detailed facts not known, and the debts for which all the goods were pledged

were in each case identical, the ruling of the master was correct, and should have been sustained.

The decree of the District Court is reversed, and the case is remanded to that court to render a judgment in accordance with our opinion passed down the 7th day of January, 1915, and the appellants recover their costs of appeal.