Kastner v. Security Savings and Loan Ass'n.

No. 27,321.

F. D. KASTNER, *Appellee,* v. THE SECURITY SAVINGS AND LOAN ASSO-
CIATION, *Appellant,* R. A. REARWIN, THE HOLLAND FURNACE COM-
PANY, WILLIAM P. TITUS, TRESSLER & GOLDSBERRY, *Appellees.*

SYLLABUS BY THE COURT.

1. MECHANICS' LIENS—*Priority Over Mortgage—Necessity of Compliance With
Ordinance.* The proceedings considered in an action involving priority of
mechanics' liens over lien of a mortgage, and *held,* a claimed lien for plumb-
ing was not invalid for want of compliance with a city plumbing ordinance.

2. SAME—*Contract With Agent of Owner.* Lumber ·for the building was fur-
nished under contract with an agent of the owner.

3. SAME—*Effect of Changes in Original Plan.* Changes in the original plan of
the building after construction commenced and after the mortgage was given,
were not of such a character that the original design, purpose or identity of
the building was changed.

4. SAME—*Priority Over Mortgage—Effect of Reserving Title in Seller.* A lien
claimant was properly awarded a lien prior to the mortgage lien for a furnace
installed in the house, title to which was reserved in the seller when the fur-
nace was sold.

5. APPEAL AND ERROR—*Amount in Controversy.* A lien claimant was awarded
a prior lien in the sum of $75. *Held,* the amount in controversy is not within
the jurisdiction of this court on appeal.

6. MECHANICS' LIENS—*Generally.* Minor assignments of error considered, and
held to be without merit.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed
June 11, 1927. Affirmed.

*J. O. Wilson* and *J. H. Wilson,* both of Salina, for the appellant.

*F. B. Bristow* and *W. B. Crowther,* both of Salina, for appellee F. D. Kast-
ner; *Z. C. Millikin, H. C. Tobey* and *J. F. Corder,* all of Salina, for appellees
R. A. Rearwin, The ·Holland Furnace Company, W. P. Titus and Tressler &
Goldsberry.

The opinion of the court was delivered by

BURCH, J.:   The action was one to foreclose a mechanic's lien.
Other lien claimants and a mortgagee were made parties defendant.
All the mechanics' liens were given priority over the mortgage, and
the mortgagee, the Security Savings and Loan Association, appeals.

Nina A. ·Banker owned a lot in the city of Salina, on which a
dwelling house was erected.   Plaintiff contracted with the owner's

Appeal and Error, 3 C. J. p. 377 n. 83.   Courts, 15 C. J. p. 1064 n. 40.   Me-
chanics' Liens, 40 C. J. pp. 95 n. 18, 137 n. 68, 288 n. 14, 16, 293 n. 52 new, 513
n. 72.

Kastner v. Security Savings and Loan Ass'n.

husband to do the plumbing. The loan association contends no lien for plumbing was perfected because of noncompliance with a city ordinance. The ordinance made it unlawful to connect with sewer or water mains or to install plumbing without making application for a permit on forms to be supplied by the plumbing inspector. The plumbing inspector was also building inspector. The city did not provide a form of application for plumbing and for sewer and water connection permits, and the only form of permit which it provided was a building permit. The result was, the building and plumbing inspector treated the building permit as covering plumbing and water and sewer connections. Pursuant to issuance of a building permit, he made plumbing and water and sewer connection inspections. That was the practice of the office, and in this instance a building permit was duly issued, and all required inspections were made. The case is not one of violation of the ordinance through wrong interpretation, but is one of practical administration of an ordinance which the city itself did not fulfill by providing necessary forms.

R. A. Rearwin furnished the lumber for the improvement. It is contended the contract was not made with an agent of the owner. The contract was made with W. L. Tickel. Nina Banker, owner of the lot, was his daughter. Tickel was a carpenter, and testified as follows:

"I made a sketch of the house she wanted to build on her lot. We talked the matter over at home, and I was requested to go to the lumber dealer's and get a price on a list of lumber I prepared.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Q. I say at whose request did you go there? A. Banker's.

"Q. Had that been talked about at home before you went in? A. Yes, sir.

"Q. You say you went down to Rearwin's at Claude's request? A. Yes, sir."

Claude A. Banker, Nina's husband, made application for the building permit, and ordered lumber as it was needed. Tickel worked on the house from the time it was commenced until it was completed. When the building was finished, Nina Banker gave her note for the unpaid portion of the lumber bill, moved into the house, and lived in it. Which one of the Bankers, whether Nina or Claude, spoke the words of request at the home talk, was not important, and the foregoing facts, together with the natural inferences to be drawn from them, warranted the court in concluding that Tickel was agent for his daughter by original grant of authority.

As originally sketched, the house was to be 24 x 34 feet. The basement was to be a shelf-cellar basement. The house was to contain four rooms besides bathroom and breakfast room, a garage, and a sleeping porch over the garage. Mr. Tickel was a carpenter of experience, but a carpenter only. He was not an architect, and he undertook to estimate cost and build a house from a pencil sketch, without taking into consideration expensive things not included in carpenter work, such as bathroom fixtures, and indeed some of the things which did belong to the carpenter work. He thought he could get by for $2,400. This did not include the garage if built against the house, or a chicken house. He did not take his sketch with him to Rearwin, and the estimated cost of the lumber supposed to be necessary to erect the improvement was $900. Rearwin furnished lumber to the amount of $1,605.63. The owner paid $600 on account, and Rearwin filed a lien for $1,005.63. Tickel testified his lumber estimate might have fallen short $100, and testified as follows:

"There was a lot of changes, and things that made it better. You know how it is building a house, you can build the same house and make it cost almost double."

In this instance cost greatly exceeded estimate. The dirt shoulders of the basement were removed and the basement was made full size of the house, with a partition and a concrete floor. The partition wall was of tile, and the outside walls were concrete reinforced with steel rods. Hardwood floors were laid, a buffet, cabinet, ironing board and desk were built in, and breakfast-room fixtures were added. The garage was disconnected from the house, and erected as a separate structure. A screened porch was built in the space originally designed for the garage, and the sleeping porch above was glassed in.

There was but one contract with Rearwin, and that contract was to furnish material for the improvement to be made on the Banker property. Tickel's list of lumber was an estimate, and the price given was the price on an estimated quantity of lumber. There was testimony that in such cases the purchaser of material gets what is needed for the improvement, whether more or less than the estimate, and the court might well have taken judicial notice of the practice as within common knowledge and experience. On August 5, 1925, Rearwin furnished material for concrete forms, and con-

tinued to furnish material as called for until the improvement was completed. On August 7 the basement had been excavated and the concrete foundation poured, and commencement of the building was manifest. The loan association mortgage was executed on August 17, and was recorded on August 18, 1925.

The loan association contends the nature and character of the building were so changed that none of the lumber bill in excess of $900 was lienable, and that the other items entering into alterations and changes of plan made after the mortgage was given, should not have priority over the mortgage. The leading case on the subject is *Norris' Appeal*, 30 Pa. St. 122 (1858). The case was determined by the district court of Philadelphia, and an opinion was delivered which the supreme court adopted. The opinion was written by the then presiding judge of the district court of Philadelphia, George Sharswood, who was soon to become justice and then chief justice of the supreme court of Pennsylvania. The question was whether liens related to commencement of a building or to its enlargement, and the decision was the liens related to time of enlargement. In the opinion it was said:

"The facts are that Conaway was the owner of a large lot of ground. On a part of this lot he commenced the erection of a building, intended as a manufactory for making saws by hand. After he had commenced, and before he had completed this building, he determined to enlarge his plan so as to carry on his business with steam power. This change made necessary a number of additional buildings adjoining that first contemplated, and a very considerable outlay of money. Accordingly, an engine house, with a costly steam engine, and other buildings, were then commenced and erected.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The true question then is, was the whole establishment erected on substantially one plan and design from the commencement, or was the plan or design so materially changed during the progress of the work as to make the whole a different building from that which was or would have been erected had no such change taken place?   .   .   .

"It may be safely conceded that unimportant alterations in the plan, such as the height or the number of the stories, the arrangement and finish of the different rooms, or even the addition of one or more outhouses, not materially altering its character, would not affect the rights of subsequent claimants." (pp. 123, 125, 126.)

A later case dealing with the same subject is that of *Haxtun Steam Heater Co. v. Gordon*, 2 N. Dak. 246 (1891). In that case the architect's plan of construction of a hotel contemplated the building

should be heated by means of stoves. The plan was changed, and a steam heating plant was installed. It was held a lien for the steam heating plant took priority over a mortgage executed after commencement of the building. The syllabus reads:

"Alterations in the original plans and specifications for the building, although made after the execution of such mortgage, and not at that time contemplated by either the mortgagor or mortgagee, cannot be effectual to deprive the party who furnished the labor and material for such alteration of the benefits of such superior lien, provided such alterations do not change the design and purpose of the building, so that the whole, when finished, is substantially a different building from the one first commenced." (¶ 2.)

These cases contain thorough discussions of the principles involved, and state the standards to be applied as definitely as it is practicable to formulate them. Applying those standards to the facts of the present case, all liens clearly related to commencement of the building. Mr. Tickel's pencil sketch was for a one-story, one-family dwelling house, 24 x 34 feet in size, consisting of four principal rooms, a bathroom and a breakfast room, and an inclosed space above which there was to be a sleeping porch. That was the kind of house which was built. The essential character and design were not changed in any material or substantial manner, and the identity of the structure was not changed at all. A garage was part of the original plan. Converting the garage into a screened porch and building a separate garage was the chief alteration. That alteration was unimportant so far as purpose, plan, character and identity of structure were concerned. Other changes belong in the category of better construction and finish, or involved comparatively trifling details.

The Holland Furnace Company was awarded a lien prior to the mortgage, for a hot-air furnace installed in the house. The seller reserved title to the furnace. The loan association contests the lien on the ground the seller is privileged to reclaim the furnace. The furnace in fact became a part of the house when it was installed, and the seller was privileged to look to the realty if he so desired. (*Geppelt v. Stone Co.*, 90 Kan. 539, 135 Pac. 573.) Exercise of the privilege precludes assertion that the furnace did not become an accession to the realty.

W. P. Titus was awarded a lien superior to the mortgage, for cabinet work in the sum of $75. So far as this appeal is concerned, the situation is the same as if Titus and the loan association were

the only parties, and the amount involved is not within the jurisdiction of this court. The case of *Shannon v. Abrams,* 98 Kan. 26, 157 Pac. 449, is not pertinent.

Tressler & Goldsberry were given a lien for painting and for a mirror. Goldsberry testified he had a written contract with Claude Banker, the owner's husband. What Goldsberry supposed was a written contract was merely a slip of paper, not signed by anybody, on which were written the figures for which the painting would be done. The paper was not produced, and Goldsberry testified to the figures. An oral contract was pleaded and proved, and production of the paper was just about as important as would be the production of the piece of string tied around one's finger so he would remember something.

Tressler & Goldsberry's contract was made on September 24, 1926, and their pleading stated their lien attached on that day. The loan association contends they are estopped from claiming a lien relating back to commencement of the building. The pleading claimed a first lien, and consequently there was no intentional waiver of what the law allowed. The loan association contested the lien on the specific ground the nature and identity of the building was changed, and the items were for subsequent extras. There is nothing to indicate that waiver or estoppel by pleading was called to the attention of the district court. If they had been, the pleading would doubtless have been amended, and under the circumstances this court will treat the statement of time when the lien attached as amended to conform to the mechanics' lien statute.

The judgment of the district court is affirmed.