No. 27,745.

THE ACME FOUNDRY & MACHINE COMPANY, *Appellee*, v. H. H. WAMPLER et al., *Appellees*, and THE CONTINENTAL SUPPLY COMPANY et al., *Appellants*.

(260 Pac. 972.)

SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Wage Preferences—Construction of Statute.* The wages-preference statute, providing that whenever a receiver shall be appointed of the estate of a corporation, partnership, or individual, wages due laborers shall be preferred to every other claim (R. S. 44-312), applies to receiverships in cases of insolvency only.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed November 5, 1927. Dismissed in part and reversed in part.

*C. J. Sloop, W. N. Banks, O. L. O'Brien, W. L. McVey, John Bertenshaw, Kirke C. Veeder,* all of Independence, *Dallas W. Knapp,* of Coffeyville, and *Charles F. Trinkle,* of La Cygne, for the appellants.

*Charles D. Welch, Charles Bucher, Barney Bucher, Clement A. Reed* and *A. R. Lamb,* all of Coffeyville, for the appellees.

Appeal and Error, 3 C. J. p. 411 n. 52. Corporations, 7 R. C. L. 753. Insolvency, 14 R. C. L. 659. Master and Servant, 39 C. J. p. 215 n. 5. Statutes, 36 Cyc. p. 1133 n. 91.

The opinion of the court was delivered by

BURCH, J.: The question presented by the appeal is the proper interpretation of the wages-preference law of this state, which reads as follows:

"That whenever a receiver shall be appointed of the estate of any corporation, copartnership, or individual, under the laws of this state, or whenever any corporation, copartnership or individual shall make a general assignment for the benefit of the creditors of such corporation, copartnership, or individual, the wages due to all laborers or employees other than officers of such corporation, accruing within the six months immediately preceding such appointment of a receiver or such assignment, shall be preferred to every other debt or claim against such corporation, copartnership, or individual, and shall be paid by the receiver or assignee of such corporation, copartnership or individual from the moneys thereof which shall first come into the hands of such receiver or assignee." (R. S. 44-312.)

The action was one to foreclose a mechanic's lien on an oil and gas leasehold. Various lien claimants were made parties, and the leaseholder was served by publication. A receiver was appointed for all the property of the leaseholder in the state of Kansas, and the order of appointment conferred on the receiver all the authority usually granted to receivers. Subsequently the order was modified, and the receiver's authority was limited to taking charge of the leasehold on which liens were claimed, consisting of eighty acres of land, and the buildings, wells, pumps, boilers, drilling rigs, pipe line, and other equipment, machinery, supplies and property on the land; to recovery of property belonging to the leasehold but removed from it; to holding the property intact and protecting it; and to execution of such orders respecting the property as the court might make. After the authority of the receiver had thus been restricted, a number of laborers intervened. Each one claimed a sum as wages due him, and claimed a preference under the statute. There were eleven such claimants, and the amounts of their claims ranged from $10.50 to $422.72. The property in the hands of the receiver was sold, and the proceeds were wholly insufficient to pay all claims. The wage claims were allowed, and were preferred for payment before the lienholders were permitted to participate in the meager fund. The lienholders appealed.

It will be observed the statute is a preference statute only, and not a lien statute. The statute was enacted pursuant to the sound

public policy of securing to wage earners prompt payment of earned wages, and is to be liberally construed.

The preference claimants contend the word "estate" means simply property, and the statute should apply whenever any portion of a debtor's property is placed in the hands of a receiver for any purpose. The lien claimants contend the word "estate" ordinarily refers to the collective whole of an owner's property, and when employed without modification or restriction in connection with the subject of satisfaction of debts, means the corpus of the debtor's property subject to appropriation for payment of debts. The distinction between the two interpretations is sharply drawn by the proceedings in the district court. The original order extended to all of the debtor's property within the state, and conferred general authority on the receiver to wind up his affairs. The modified order dealt with a described eighty-acre leasehold and its equipment and appurtenances, and limited the authority of the receiver to functions incident to appropriation of the specific property to satisfaction of claims upon it. It might be said the original order created a receivership for that part of the debtor's estate which was within the jurisdiction; but to say the modified order created a receivership of the debtor's estate would be to give to words a signification which does not accord with approved usage. (R. S. 77-201, *Second.*)

Turning to the context, it will be observed the preference arises under two conditions: first, when a receiver is appointed of the estate of a corporation, partnership, or individual; and second, when a corporation, partnership or individual makes a general assignment for the benefit of creditors. What did the legislature have in mind, a debtor's status, or the occurrence of a procedural event? It seems reasonable to conclude the legislature contemplated a situation calling for suspension of a debtor's dominion, and the vesting of possession, control and disposition of his assets in another for the benefit of his creditors. The methods of dealing with the situation are, first, the involuntary one of appointing a receiver, and second, the voluntary one of assignment to a trustee. The state of affairs is the substantial thing. The methods are incidental only, and are unimportant except as limitations excluding other methods of sequestration and distribution.

Correctness of the interpretation just proposed is fortified by a consideration of the history of legislation giving special protection

Acme Foundry and Machine Co. v. Wampler.

to wages. In the book, "Principles of Labor Legislation," by Commons and Andrews (1916), appears the following:

"Mechanics' lien laws represent a stage in the progress toward wage preference, but they should not be confused with it. . . .

"Mechanics' lien legislation seeks to give the laborer a claim for the payment of what is due to him, backed by the security of the structure or land on which he has been employed. . . . .

"The next step was the provision that wages should be considered as preferred claims. Nearly all the states and the federal government have laws providing that in cases of assignments, administrations, and receiverships due to death or bankruptcy, the wages of servants and employees, up to a definite sum and for work done within a limited time, shall be paid next after fees, costs, and taxes." (pp. 60, 61.)

The movement for legislation of this character was given great impetus by the decision of the supreme court of the United States in the case of *Fosdick v. Schall*, 99 U. S. 235 (1878), and subsequent decisions, approving the practice of courts of equity in railroad receivership cases of imposing reasonable requirements relating to preferential payment of labor claims. Judicial opinion differed regarding utilization of the practice in other classes of cases, and the result was, numerous statutes were enacted to secure generally to labor the benefits of the equity doctrine. These statutes are dissimilar in form and content (2 Labatt's Master and Servant, 2d ed., p. 1999; 39 C. J. 215), and it is not practicable to review them here. The Kansas statute was enacted in 1901. The legislature had before it a variety of models, and what it adopted and what it rejected give fair indication of its intention.

If in this instance the debtor had remained with his leasehold, protecting and preserving his property, the liens had been foreclosed, and the property had been sold, all without appointment of a receiver, the statute would have afforded no protection to the preference claimants. It would have been necessary for them to file liens under the statute providing for labor liens on oil and gas leaseholds (R. S. 55-207 to 55-210), or to resort to the ordinary remedy of action, judgment, and execution. Suppose the action had been one to foreclose mortgage and mechanics' liens on a house and lot. Why should laborers, whether they filed or failed to file liens under the mechanics' lien law, be preferred merely because the circumstances and condition of the property happened to call for appointment of a receiver, and should not be preferred if no receiver was needed? The theory is that if a debtor allow the law to take hold of some of his

property by any kind of process, it is a sign of financial distress, and laborers may immediately come in and secure their wages. When the Kansas statute was enacted, this theory was fully exemplified in the statutes of several states. It was provided in these statutes that, whenever property of a corporation, partnership or individual should be seized by attachment or on execution, or on any mesne or final court process, the preference should attach for wages accruing within a limited time, and not exceeding a specified amount. The Indiana statute of March 17, 1885, is illustrative:

"Hereafter, when the property of any company, corporation, firm or person, engaged in any manufacturing, mechanical, agricultural or other business or employment, or in the construction of any work or building, shall be seized upon any mesne or final process of any court of this state, or where their business shall be suspended by the action of creditors or put into the hands of any assignee, receiver or trustee, then in all such cases the debts owing to laborers or employees, which have accrued by reason of their labor or employment to an amount not exceeding fifty dollars to each employee, for work and labor performed within six months next preceding the seizure of such property, shall be considered and treated as preferred debts, and such laborers or employees shall be preferred creditors and shall be first paid in full, and if there be not sufficient to pay them in full, then the same shall be paid to them *pro rata,* after paying costs." (Acts 1885, ch. III.)

In framing the statute of 1901 the Kansas legislature definitely rejected the danger-flag theory. The constitution provides that no bill shall contain more than one subject, which shall be clearly expressed in its title (Art. 2, §16). In this instance the original bill was senate bill No. 26, which bore the following title: "An act to prefer the wages of employees of corporations, partnerships and individuals in case of insolvency." (Senate Journal 1901, p. 66.) When the bill passed the senate the title was agreed to. In the house the bill was amended as follows:

"In section 1, strike out the words 'employees or laborers thereof,' and insert in lieu thereof the words: 'laborers or employees other than officers of such corporation, accruing within the six months immediately preceding such appointment of a receiver or such assignment.'" (House Journal 1901, p. 1300.)

The bill was passed by the house as amended, and the title was agreed to. The senate concurred in the house amendment, and the act became effective on publication in the statute book as chapter 229 of the Laws of 1901, the title of which is the title of the original bill.

Acme Foundry and Machine Co. v. Wampler.

In the case of *Mitchell v. The State,* 61 Kan. 779, 60 Pac. 1055, the court said:

"We cannot ignore the language of the title, which in this case furnishes the light by which we may read the purpose of the legislature." (p. 784.)

Reading the legislative purpose in the light furnished by the title, it is clear the act applies to general receiverships in cases of insolvency, and not to supervenient receiverships for limited or special purposes only.

In the case of *Geppelt v. Stone Co.,* 90 Kan. 539, 135 Pac. 573, the statute was applied. In that case the receivership was general, and all creditors were given leave to interplead.

The sum allowed one lienholder who appealed was less than $100. If this appellant's claim had been disallowed, he could not have invoked the appellate jurisdiction of this court, and manifestly he may not do so because his lien was subordinated to preferred claims. The preferences awarded several intervening laborers were for less than $100. Each one of the interveners was fighting for his own individual protection. Their claims are several. No one of them is large enough to give this court jurisdiction, and they cannot be added together to make a jurisdictional amount (*Kastner v. Security Savings and Loan Ass'n,* 123 Kan. 632, 256 Pac. 989).

The appeal is dismissed so far as it relates to preference of wage claims less than $100 in amount. The judgment of the district court is reversed so far as it relates to preference of wage claims of more than $100, and the cause is remanded with direction to deny such preferences.