## In re BELL MOTOR CO.

## CRAIG v. INDUSTRIAL ACCEPTANCE CORPORATION (two cases).

### Nos. 8946, 8947.

Circuit Court of Appeals, Eighth Circuit.

Nov. 14, 1930.

George V. Farris, of Joplin, Mo., for appellant.

A. A. Mabrey, of Chicago, Ill. (W. S. McClintock, A. L. Quant, and F. K. Ferguson, all of Kansas City, Mo., on the brief), for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment of the lower court reversing an order of the referee in bankruptcy denying the reclamation petition of the appellee, Industrial Acceptance Corporation. The judgment of the District Court sustained the petition for review and remanded the cause to the referee in bankruptcy "with instructions to grant and sustain the petition of the Industrial Acceptance Corporation, for reclamation," etc.

The Bell Motor Company, a Missouri corporation, with its place of business at Joplin, Mo., was adjudged a bankrupt on April 28, 1928, upon petition filed on that date by certain of its creditors. On the same day a receiver was appointed, who took charge of all property then in possession of the bankrupt, including a number of automobiles manufactured by the Studebaker Corporation of America, for which company the bankrupt was the distributing agent for Joplin, Mo., and surrounding territory. Following the taking over of these automobiles by the receiver, the Industrial Acceptance Corporation, of South Bend, Ind., appellee herein, filed its petition for reclamation of these automobiles, claiming title and right of possession thereto on the grounds that (1) it was the absolute owner of these motor vehicles under trust receipts; (2) that, if the trust receipts were construed to be conditional sale agreements, then the filing thereof for record prior to bankruptcy, created liens valid as against the trustee; (3) that it was entitled to recover the property because the bankrupt obtained same upon materially false credit statements relied upon by it; and (4) that the bankrupt obtained the property without reasonable expectation of paying for same, and with actual intent not to pay therefor.

In response to the petition for reclamation, the trustee in bankruptcy answered, admitting possession of the automobiles, which he alleged he took as receiver on the 29th of April, 1928, and that he was in possession of the same as trustee of the estate of the Bell Motor Company, bankrupt; that the trust receipts relied upon by the petitioner, Industrial Acceptance Corporation, were merely security for the trade acceptances given by the Bell Motor Company to the petitioner; that the Bell Motor Company was at all times in possession of the automobiles; that the trust receipts were not recorded, as required by law, and that upon adjudication in bankruptcy the trustee became possessed of the automobiles by virtue of the National Bank-

ruptcy Act; that the contract for sale of the automobiles was made in the state of Missouri, and hence was governed by the laws thereof, and that it is provided in section 2232, Revised Statutes of Missouri 1919, the same being the laws of Missouri in force at the time, that "No sale of goods and chattels, where possession is delivered to the vendee, shall be subject to any condition whatever as against creditors of the vendee, or subsequent purchasers from such vendee in good faith, unless such condition shall be evidenced by writing, executed and acknowledged by the vendee, and recorded as now provided in cases of mortgages of personal property"; that by reason of these provisions, all the conditions of the trust receipts were void as against creditors of the Bell Motor Company, bankrupt, and said automobiles became a part of the bankrupt estate, to be administered for the benefit of all creditors. The answer contained a denial of all allegations, except those specifically admitted.

Subsequent to the hearing before the referee, the automobiles were ordered sold, and the proceeds of such sales are now in the hands of the trustee.

For a number of years prior to the transactions involved in this proceeding, the Bell Motor Company had a written contract with the Studebaker Corporation of America to sell Studebaker cars. On the 23d of April, 1928, it made an assignment of all its property to the Conqueror Trust Company as trustee for the benefit of all its creditors, and the trust company took possession of all the property of the motor company under the terms of this assignment, but on April 28th a petition in bankruptcy was filed, and a receiver appointed, as has already been noted. The Industrial Acceptance Corporation is a corporation separate and distinct from the Studebaker Company, engaged solely in the matter of financing motorcar dealers dealing in Studebaker automobiles. It did not itself buy and sell automobiles, but bought trade acceptances and notes, and for some time had financed the purchase of automobiles by the Bell Motor Company. The method of dealing was as follows: The Bell Motor Company would order from the Studebaker Company such automobiles as it desired, and these cars would be shipped by the Studebaker Company on shipper's order, with sight draft attached, to Joplin, Mo., the draft being sent to some bank in Joplin, with instructions to deliver the bill of lading to the Bell Motor Company upon payment of the draft, which draft was payable as follows: Twenty per cent. of the amount of the purchase price in cash by the Bell Motor Company and the remaining 80 per cent. to be paid by trust receipts and trade acceptances attached to the draft, payable to the Industrial Acceptance Corporation and executed by the Bell Motor Company. The bill of lading was then delivered to the Bell Motor Company, and possession of the automobiles taken thereunder.

Between September, 1927, and March, 1928, the Bell Motor Company had purchased from the Studebaker Company a number of automobiles under the arrangement above set forth. The trust receipts covering these transactions were held by the Industrial Acceptance Corporation, and were not filed or recorded in the office of the recorder of Jasper county, Mo., until the 23d of April, 1928, five days before filing of the petition in bankruptcy. These trade acceptances and trust receipts were on printed forms, and, with the exception of dates and amounts and descriptions of automobiles named therein, were identical in all respects, and were printed on the same sheet; that is, the trust receipt and the trade acceptance were attached, and were all in the following form:

"Industrial Acceptance Corporation
"South Bend, Indiana
"Automobile Acceptance
"Wholesale
"Kansas City, Mo. Feb. 27, 1928.

"On or before 120 days after date of acceptance hereof, pay to the order of Industrial Acceptance Corporation $839.44 Eight Hundred Thirty-nine and 44/100 Dollars with interest at 6% per annum from date of maturity to date of payment, with exchange. Each of the parties hereto waives presentment for payment, protest and notice of protest and non-payment.
"Industrial Acceptance Corporation,
"By I. J. Stanley.
"To Bell Motor Company
(Dealer)
"Joplin, Missouri
(Address)
"Accepted
"Date Mar. 15, 1928
"Payable at Conqueror First Natl. Bank
(Dealer's Bank)
"Joplin, Missouri.
"Signed Bell Motor Company
"J. W. Lytle, Secy.
(Officer or Firm Member)
"Dealer's Bank Please Sign
"We hereby certify that attached dealer's signatures are genuine, and also acknowledge

having retained first duplicate copy of this acceptance for collection purposes.

"Conqueror First National Bank of Joplin,
    "By H. L. McCubbin.

"Trust Receipt.

"Received from Industrial Acceptance Corporation, a corporation of the State of Virginia, having its general offices in South Bend, Indiana, on behalf of holder of the above Acceptance, which has this day been accepted by the undersigned:

"Bill of Lading covering Studebaker Motor Vehicle, Model Dict. Roy Sedan, Serial Number 1420438, with standard catalogue equipment and attachments.

"In consideration thereof it is agreed that the undersigned will hold said property in trust as the property of said Industrial Acceptance Corporation, for the purpose of storing said property in a clean, dry place, free of charge; that the undersigned has not the right to and will not operate or use said property of the Industrial Acceptance Corporation for demonstration or other purposes, nor loan, rent, mortgage, pledge, encumber, sell or deliver said property except as authorized hereunder; that the undersigned may sell said property for the account of the Industrial Acceptance Corporation or holder of said acceptance, to a bona fide purchaser at retail, for cash or current funds approved by Industrial Acceptance Corporation in amount not less than the sum then due on said acceptance; that the undersigned, upon demand, prior to such sale, will return said property unused, and in good condition to the order of the Industrial Acceptance Corporation; that in the event said property shall be sold as provided herein the undersigned will hold the proceeds thereof in trust and separate from his (its, their) funds until he (it, they) shall have paid over to the Industrial Acceptance Corporation the amount of said acceptance, which amount is to be immediately transmitted to the Industrial Acceptance Corporation for the holder of said acceptance. The undersigned promises to pay all costs, including reasonable attorney's fees, incurred by the holder hereof in the enforcement of its right hereunder. It is understood that nothing herein shall prevent the undersigned, at the time he (it, they) first takes possession of said vehicle, from driving it direct from the warehouse, factory or railroad station to his (its, their) place of business, but at his (its, their) own risk (except in case of theft or fire) in the event of loss or damage to said car or to other property or to persons.

"The undersigned acknowledges receipt of a full, true and complete copy of this agreement.

"Witnesses:
"[Signed]    H. L. McCubbin,
"[Signed]    Bell Motor Company    [Seal.]
    (Drawee Dealer)
    "By J. W. Lytle, Secy.
    (Officer or Firm Member)"

Of the fourteen trade acceptances and trust receipts involved in this action, the first one was dated September 21, 1927, and the last March 2, 1928, and they were all filed for record April 23, 1928. There was no evidence before the lower court that, between the dates of these instruments and the date of the filing thereof, the Bell Motor Company incurred any obligations to other creditors, although this question is sought to be injected in the argument of this case.

On this appeal it is contended by appellant that the trust receipts forming the basis of appellee's right to possession of the automobiles are in the nature of conditional sale contracts or chattel mortgages, and that, not being recorded as required by the laws of the state of Missouri, they are void as against creditors, and the title to the cars passed to the trustee. The nature, characteristics, and proper interpretation of the trust receipts involved in this action are ably briefed by counsel on both sides. The decisions are not in entire harmony as to these instruments, some courts holding that they are to be regarded as conditional sale contracts, others that they are in the nature of chattel mortgages, while still others that they are contracts of agency creating bailments. They are, confessedly, valid instruments as between the Industrial Acceptance Corporation and the Bell Motor Company. They are not of recent origin. They were originally employed as a convenient method of financing importations, and they are still so employed. With the advent of the motor vehicle and the development of that industry, such receipts have been introduced in transactions involving the financing of the sales of motor vehicles, and it is not perceived why the trust receipt when used in domestic transactions, should be governed by any other principles than when used in financing importations. In re Richheimer (C. C. A.) 221 F. 16; In re Bettman-Johnson Co. (C. C. A.) 250 F. 657; In re Killian Mfg. Co. (D. C.) 209 F. 498, affirmed (C. C. A.) 215 F. 82; Assets Realization Co. v. Sovereign Bank of Canada (C. C. A.) 210 F. 156; In re Cattus (C. C. A.) 183 F. 733; Century Throwing Co.

v. Muller (C. C. A.) 197 F. 252; General Motors Accept. Corp. v. Hupfer, 113 Neb. 228, 202 N. W. 627; Ohio Sav. Bank & Tr. Co. v. Schneider, 202 Iowa, 938, 211 N. W. 248; T. D. Downing Co. v. Shawmut Corporation, 245 Mass. 106, 139 N. E. 525, 27 A. L. R. 1522; People's Nat. Bank v. Mulholland, 228 Mass. 152, 117 N. E. 46. The instrument purports to vest and retain title in the holder of the receipt, and it has been quite generally held that the rights incident to such title and ownership will be recognized not only as against the one giving the receipt, but his receiver, trustee in bankruptcy, and creditors generally, unless the contract is itself violative of local statute. The courts generally have given effect to the express provisions of the trust receipt, and one of these provisions is to the effect that the goods or property is held as the property of the party to whom the receipt is given. Commercial Nat. Bank v. Canal-Louisiana Bank & Tr. Co., 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25; In re Mulligan (D. C.) 116 F. 715; Charavay & Bodvin v. York Silk Mfg. Co. (C. C.) 170 F. 819; In re Cattus (C. C. A.) 183 F. 733; Century Throwing Co. v. Muller (C. C. A.) 197 F. 252; Brown v. Massachusetts Hide Corp. (C. C. A.) 218 F. 769; John Deere Plow Co. v. McDavid (C. C. A.) 137 F. 802, 810.

In John Deere Plow Co. v. McDavid, supra, this court considered a contract which the lower court had held to be a contract of conditional sale. In that case, Hymes Buggy & Implement Company had made a contract with the John Deere Plow Company to handle implements for it under contract which the lower court held invalid as against the trustee in bankruptcy, for want of filing with the recorder of deeds. This decision was reversed, and the right of the John Deere Plow Company to reclaim the property sustained, the court holding that the title to the goods covered by the contract at the time of adjudication in bankruptcy did not pass to the bankrupt's trustee. In the course of the opinion in that case, it is, among other things, said:

"It is not a contract in which the consignee can sell at any price, or on any terms he may choose, but, as we understand it, it is a contract or consignment of goods to be sold on commission by the consignee, as agent for the consignor, for cash. The plow company had the right, under the contract, to require the goods returned, and in this it lacks one of the necessary elements of a contract of sale, namely, to pay money, or its equivalent, for the goods delivered, with no obligation to return. In the case of Met. Nat. Bank v. Benedict Co., 74 F. 182, 20 C. C. A. 377, this court had under consideration a contract wherein the consignee agreed 'to realize for consignment of ready-made clothing of Benedict Company, as per memorandum received of Henry Benedict, president of the Benedict Company, net prices as per memorandum, without any charges of commission, freight, or any other charges,' and in which the consignee also agreed 'to keep the amount of the consignment at all times, until the agreement expires, fully insured against fire or other damage, and that no part of the assignment shall remain unsold nor unpaid by February 1st, 1895.' And the court held that the contract was not a sale, but a contract of factorage, which passed no title to the consignee. In disposing of the case, the court, speaking through Judge Caldwell, said: 'The money to be paid by the commission company was not upon a sale of the goods to that company, but upon a sale of the goods by that company. The commission company was never to pay for the goods as upon a purchase by it, but only to account for the proceeds of the sale of them at prices fixed by the contract.' "

In this connection, the following provision of the trust receipts under consideration seems pertinent:

"That the undersigned may sell said property for the account of the Industrial Acceptance Corporation or holder of said acceptance, to a bona fide purchaser at retail, for cash or current funds approved by the Industrial Acceptance Corporation in amount not less than the sum then due on said acceptance; that the undersigned, upon demand, prior to such sale, will return said property unused, and in good condition to the order of the Industrial Acceptance Corporation; that in the event said property shall be sold as provided herein the undersigned will hold the proceeds thereof in trust and separate from his (its, their) funds and will not deposit same to his (its, their) own account or mingle same in any way with his (its, their) funds until he (it, they) shall have paid over to the Industrial Acceptance Corporation the amount of said acceptance, which amount is to be immediately transmitted to the Industrial Acceptance Corporation for the holder of said acceptance."

As in the John Deere Plow Case, any sales authorized were "for the account of the Industrial Acceptance Corporation." The money to be paid under this trust receipt was upon a sale of the goods by the company, not upon a sale of the goods to the company.

■ If, as held by many of the authorities, the trust receipts created a bailment, the title being vested in the Industrial Acceptance Corporation and the possession in the Bell Motor Company, then confessedly they are not conditional sale contracts, and hence the Missouri statute with reference to recording would have no application to these instruments. As said by the Supreme Court of Nebraska in General Motors Acceptance Corporation v. Hupfer, supra:

"This leaves for our determination the question, What is the legal effect of the trust receipt? Under it, Trotter had but one use he could make of these automobiles, and that was to display them; and he had but one trust, and that was to care for and protect them. He might become the owner by complying with the terms of the receipt, but until such compliance was had he is a bailee and no more. Thus, this trust receipt was not an absolute sale, mortgage, conditional sale, or lease, and it was not necessary that it be recorded."

■ But there is another fatal weakness in appellant's contention. Even if these trust receipts should be construed to be in the nature of conditional sale contracts, and hence, under the Missouri law, subject to the recording statute above quoted, still the instruments were valid as between the parties and as to all the world except creditors of the bankrupt who extended credit during the time they were withheld from record. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 53, 60 L. Ed. 275. In the instant case there was no claim in the lower court that these instruments were void because credit had been extended to the bankrupt by others while they were being withheld from record, nor was there any proof that there were any such subsequent creditors. The instruments were filed for record before the adjudication in bankruptcy, and the trustee took the property of the bankrupt subject to all liens or claims against it at the time of the filing of the petition. It is argued that this court in Hodiamont Bank v. Livingstone, 35 F.(2d) 18, 19, has announced a different rule, and that the decision of the lower court in this case violates the rule announced therein. In this contention we think appellant is in error. In the Hodiamont Bank Case it appeared that, between the date of the chattel mortgages and the date they were filed for record, creditors extended credit to the bankrupt. In the course of the opinion in that case it is said:

"The two old notes were surrendered to the bankrupt, marked 'Paid.' By consent of the bankrupt, the two chattel mortgages were recorded June 29, 1927, the date of the filing of the petition in bankruptcy. Between February 28, 1927, the date of execution and delivery of the chattel mortgages, and June 29, 1927, the date of recording the same, 86 creditors extended credit to the bankrupt in the aggregate sum of $23,739.76. These claims have not been paid, and have been proved against the bankrupt estate."

■ No such state of facts was presented to the lower court in the case at bar. There was neither pleading nor proof of any such facts. As to general creditors other than such as may have extended credit to the bankrupt during the time that the instruments creating a lien may have been withheld from record, the rule announced by the Supreme Court in Bailey v. Baker Ice Machine Co., supra, is controlling. It is there said:

"Under the recording law of Kansas a contract of conditional sale is valid between the parties, whether filed for record or not, but is void as against a creditor of the vendee who fastens a lien upon the property by execution, attachment, or like legal process before the contract is filed for record. Gen. Stat. 1909, § 5237; McVay v. English, 30 Kan. 368, 371, 1 P. 795; American Lead Pencil Co. v. Champion, 57 Kan. 352, 357, 46 P. 696; Youngberg v. Walsh, 72 Kan. 220, 227, 83 P. 972; Geiser Mfg. Co. v. Murray, 84 Kan. 450, 114 P. 1046; Paul v. Lingenfelter, 89 Kan. 871, 132 P. 1179; Geppelt v. Middle West Stone Co., 90 Kan. 539, 544, 135 P. 573; Dixon v. Tyree, 92 Kan. 137, 139, 139 P. 1026; Big Four Implement Co. v. Wright, 47 L. R. A. (N. S.) 1223, 125 C. C. A. 577, 207 F. 535. Here the contract was made October 14, 1911, and filed for record May 15, 1912. In the meantime no creditor fastened a lien upon the property by execution, attachment, or other legal process. But it is contended that § 47a, clause 2, of the bankruptcy act, as amended in 1910, chap. 412, 36 Stat. at L. 838, 840, Comp. Stat. 1913, §§ 9586, 9631 [11 USCA § 75, subd. a, cl. 2], gave the trustee the status of a creditor having such a lien. That section provides that a trustee in bankruptcy, 'as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings.' Although otherwise explicit, this provision does not designate the time as of which the trustee is to be regarded as having acquired the status indicated, and yet some point of time must be intended. Is it the date of the trustee's

appointment, the filing of the petition in bankruptcy, or some time anterior to both? When not otherwise specially provided, the rights, remedies, and powers of the trustee are determined with reference to the conditions existing when the petition is filed. It is then that the bankruptcy proceeding is initiated, that the hands of the bankrupt and of his creditors are stayed, and that his estate passes actually or potentially into the control of the bankruptcy court. We have said: 'The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition.' Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 307, 56 L. Ed. 208, 213, 32 S. Ct. 96. And again: 'We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed, and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition.' Everett v. Judson, 228 U. S. 474, 479, 57 L. Ed. 927, 929, 46 L. R. A. (N. S.) 154, 33 S. Ct. 568. And see Zavelo v. Reeves, 227 U. S. 625, 631, 57 L. Ed. 676, 678, 33 S. Ct. 365, Ann. Cas. 1914D, 664. Had it been intended that the trustee should take the status of a creditor holding a lien by legal or equitable process as of a time anterior to the initiation of the bankruptcy proceeding, it seems reasonable to believe that some expression of that intention would have been embodied in § 47a as amended. As this was not done, we think the better view, and one which accords with other provisions of the act, is that the trustee takes the status of such a creditor as of the time when the petition in bankruptcy is filed. Here the petition was filed almost two months after the contract was filed for record, and therefore the trustee was not entitled to assail it under the recording law of the state."

It follows that the lower court correctly held that the appellee was the owner and entitled to the possession of the automobiles described in its trust receipts, and its judgment should be and is affirmed. As the matters presented constituted a "controversy arising in bankruptcy proceedings," the appeal was properly allowed by the District Court, and the appeal allowed by this court is therefore dismissed.