## WILSON v. MILLER AND BEESON.

1. PLEADINGS: PETITION TO CANCEL CONVEYANCE. In a proceeding to cancel a conveyance, it is sufficient to aver facts, showing a right to that relief, without setting out the prior history of the title.

2. ACTUAL NOTICE. To charge a purchaser with notice of an outstanding equitable title, knowledge must be clearly brought home to him. Rumors, suspicions, and assertions, made by parties strangers to the title, and based upon hearsay, will not be sufficient; the facts must be such as would put him upon an inquiry, which, if prosecuted, would lead him to a knowledge of those rights with which it is proposed to affect him.

3. SAME. A person who fraudulently and designedly abstains from making inquiries or obtaining knowledge, is not a *bona fide* purchaser.

*Appeal from Polk District Court.*

TUESDAY, APRIL 19.

THE petition alleges that the plaintiff sold and, on the 5th day of August, 1856, conveyed to the defendant, Miller, the undivided half of a certain ten acres of land; and that this deed was duly recorded shortly after its execution. It being afterwards ascertained that this deed neglected "to give the variations," the plaintiff, at the instance of Miller, and upon his promise to surrender the first deed, on the 19th day of February, 1857, executed to Miller another deed for an undivided half, and this deed was also recorded. The original petition in this cause was filed against Miller alone, and alleged that the second deed was executed for the sole purpose of correcting the first deed, and not for the purpose of conveying any additional interest in the land. Miller's refusal to surrender the first deed, as he promised to do when he received the second deed, is alleged; and the prayer of the petition is, that the first deed may be canceled.

The first petition against Miller was filed February 11th, 1860. On the same day, Miller conveyed the whole of the land to Beeson.

On the 24th of April, 1860, the plaintiff, by amended petition, makes Beeson a party defendant, charging him

with notice, both actual and constructive, of the plaintiff's rights, and that he purchased, with intent to defraud the plaintiff.

A subsequent amendment charges Miller and Beeson with cutting down timber, and with tearing down and removing the boiler and machinery of a mill situate upon the premises.

A still subsequent amendment, filed in February, 1863, and at or about the time of the trial in the court below, alleged that Beeson executed his notes to Miller for $1,500, as the consideration of the purchase of said property, and that he paid the same to Miller after he, Beeson, was served with notice of this suit. The plaintiff, in this amendment, for the first time, prayed that if Beeson was not an innocent purchaser, that the plaintiff might have a decree against him for the purchase-money, which he paid after the service of notice upon him.

Beeson's answer denies all notice, actual or constructive, of the plaintiff's rights, and he claims to be a purchaser for value, and without notice.

Miller's answer sets up a verbal purchase by him and one Conrad Stutzman, in 1855, of the whole ten acres, from Wilson, in consideration of $50, and the agreement to erect thereon a steam saw mill; that the mill was erected; that Wilson (the plaintiff) afterwards purchased Stutzman's interest in the mill, and became a partner with Miller in the said mill.

As to whether the second deed was made to convey an additional interest, or only to correct the first deed, Miller's answer is evasive; but taking it altogether, it is quite clear that he does not claim that he made an additional purchase of Wilson at or about the time the second deed was made; and he claims to hold the interest which this deed gave him for indemnification for partnership advances.

Upon the pleadings and evidence, the Court found that

Wilson v. Miller and Beeson.

Beeson was a purchaser, without notice, and hence rendered no decree against him for the land. The Court also found that the second deed from Wilson to Miller was executed solely for the purpose of correcting the first, and was merely intended to take its place. It rendered a decree against Beeson, jointly with Miller, for $1,123.50 (amount of purchase-money which Beeson paid Miller after notice of this suit), and against Miller alone, for the further sum of $674.25.

From this decree both the plaintiff and defendants appeal.

*W. W. Williamson* for plaintiff.

*Curtis Bates* for Beeson.

*S. Sibley* for Miller.

DILLON, J.—I. *As to Miller's appeal:* Aside from the question of variance, which will be noticed presently, the cause as to Miller may be disposed of very briefly; and indeed it seems scarcely possible that his counsel are in earnest in supposing it to have any merits.

His answer scarcely denies the main allegation in the bill, that the second deed was made to correct the first one. His claim to hold the interest it conveyed as a security for partnership advances is not established, but, on the contrary, it is shown by the plaintiff's testimony to be false and groundless.

The testimony is decisive, that the second deed was not intended to convey any additional interest, but simply to supply the omission or mistake in the first one; and it is equally decisive that Miller, in making the sale to Beeson, designed to, and did commit a gross fraud upon the plaintiff. This Court holds, therefore, as the District Court held, that the plaintiff is clearly entitled to the relief prayed for, as against Miller.

II. *As to Beeson's appeal and Wilson's appeal:* And here the case is surrounded with more difficulty. The first question which is presented is in relation to the alleged variance between the case made by the plaintiff in his petition, and that made by his proofs.

The allegation in the petition is, that the plaintiff, about the 5th day of August, 1856 (the date of the first deed), sold Miller the undivided half of the ten acres in dispute. The alleged variance is, that the proof shows that in 1855 the plaintiff agreed verbally to sell the whole of the ten acres in controversy to Miller and Stutzman, for the purpose of building a mill, and that they took possession, built the mill, and paid for the land. This is so. But the evidence also establishes that no deed was ever made to Miller and Stutzman; that with the consent of Miller, the plaintiff purchased Stutzman's interest in the mill and land, and became a partner with Miller, in the place of Stutzman. In equity, on the 5th day of August, 1856, the plaintiff was the owner of an undivided half of the property, holding the legal title of the whole, and Miller was the owner of the other undivided half. On the day last named, Wilson made to Miller the first deed, conveying an undivided half. And the petition, in stating the plaintiff's right to relief, does not go behind this deed; and while it might have been proper to do so, we do not think that it was at all necessary.

By the deed, and by the very terms of it, he did bargain and sell to Miller an undivided half of the property. The main object of the petition was to cancel a deed. It was sufficient to aver facts which showed a right to that relief. It was not necessary to state the prior history of the title.

Besides, all this matter, as to a verbal sale of the whole ten acres to Miller and Stutzman, and the transfer of Stutzman's interest to Wilson, is set forth in Miller's answer; and it was, therefore, embraced in the issues made

by the pleadings. Where an answer is filed, the plaintiff is not limited to the relief asked by his petition, but may have "any relief consistent with the case, made by the petition, and embraced within the issue (Rev., § 3133); and it is the duty of the Court, "in every stage of an action, to disregard any error or defect in the proceeding, which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected, by reason of such error or defect." Rev., § 2978.

The substance of the plaintiff's case was his right to have the first deed canceled. As to the substance of this issue, there was no variance, much less any which would materially affect or prejudice the defendants.

The next question which we propose to examine is, whether the defendant Beeson had *actual* notice of the plaintiff's right, at the time of his purchase from Miller, on the 11th day of February, 1860. On this day Wilson was the equitable owner of an undivided one-half of the premises in controversy, although he had, with the most blundering stupidity, conveyed to Miller the whole, in his attempt to perfect a conveyance of a moiety.

To affect or charge Beeson, notice of the plaintiff's rights must be clearly brought home to him. Vague rumors and indeterminate suspicions will not answer, nor will general assertions, made by strangers to the title, and resting on hearsay, be sufficient. The facts must be such as to bind the conscience of the party, to alarm him, and put him upon such inquiry, as if prosecuted would lead him to a knowledge of those rights, with which it is proposed to affect him. Without referring to the cases in detail, we may state that this Court has gone further than many courts, and, probably, as far as any other court, in requiring, in cases, like the present, that the proof of notice, or what in law will amount to notice, should be clear and decisive. And it is not our intention to relax

the salutary stringency of the proof, which ought to be required in cases like the one under consideration.

Bearing this in mind, after a laborious and careful examination of the whole testimony in the cause, covering one hundred and twenty-five pages of the record, we are thoroughly satisfied that Beeson either had actual and positive knowledge of the plaintiff's rights, or what is the same thing in law, that he designedly abstained from making inquiries of Wilson, for the purpose of avoiding knowledge. In other words, he either knew of Wilson's rights, or fraudulently determined not to know them; and in either case he is not a *bona fide* purchaser. It would answer no useful end to go through with the testimony of each witness in detail, for the purpose of presenting *in extenso* the grounds on which this conclusion rests.

The plaintiff lived in the immediate neighborhood of the property in question, and had occasion, in going to one of his farms, to pass the mill almost daily. He knew of Wilson's purchase of Stutzman, in 1855; that the mill was operated by Miller & Wilson, from that time till 1859, under the firm name of Miller & Wilson; that in 1859 and down to early in 1860, it was run by Miller & Fisher, the latter being the son-in-law of the plaintiff. The mill was everywhere known and spoken of as Miller & Wilson's mill. In the fall of 1858, Beeson requested the witness, Mock, to ask Wilson what he would "take for *his half of the mill*, and to try and find out the lowest figures that Miller would take, and let him know." This the witness did, and reported the price to Beeson, who thought the figures ($3,000) too high. One or two years after, Wilson acquired Stutzman's interest in the mill. Beeson, according to the testimony of Wilson, corroborated by Mock, endeavored to buy Wilson's interest in the mill. He also endeavored, not long before his purchase of Miller, to buy the Wilson half interest of King Fisher, the son-in-law

of Wilson. These circumstances, in connection with the ominous and mysterious declarations of Beeson to the witness, Calvin Swisher, the haste with which the purchase was concluded, on the very day this suit was brought, and after its commencement had been threatened against Miller, by the plaintiff; the failure of Beeson to inquire of his neighbor, the plaintiff, concerning Miller's title; the declaration of the justice to the defendants, when he took the acknowledgment, that he did not want to hear anything about their trade; the low price at which the property was purchased, being little over half its value; Miller's subsequent connection with the property in its tearing down, in the plaintiff's absence, and its unexplained removal to a destination unknown, with Beeson's knowledge and consent, all concur with other facts and circumstances that might be specified, in inducing the conviction, that the purchase of Beeson was not made in good faith.

The verbal gift of his interest in the property, by Wilson to Fisher, on terms not shown to have been complied with, and under a contract, which the testimony satisfies us, was abandoned, will not deprive Wilson of his right to relief.

From the testimony before us, we find and fix the value of Wilson's interest in the property, at the date of the conveyance by Miller to Beeson, at $1,250. As we differ with the District Court, as to the grounds upon which a decree should be entered for the plaintiff, the decree in the court below will be set aside, and the cause remanded. A decree will there be entered, establishing the plaintiff's right to an undivided half of the ten acres of land. As the testimony before us does not enable us to ascertain the value of the land, as it was left after the waste which was committed by the defendants, the District Court will direct a reference on this point, or take the proof itself. One-half of the value, when ascertained, will be deducted from the $1,250 above named, and a decree will be entered

against Beeson and Miller for the balance, with interest, allowing, however, to the defendants the one-half of any taxes they may have paid on the property.

Of the costs in this court, it is ordered that the plaintiff pay one-half, and the defendants the residue.