No. 30,248.

COMMERCIAL CREDIT COMPANY, *Appellant*, v. PAUL GAISER, *Appellee*.

(7 P. 2d 527.)

Opinion filed January 30, 1932.

*W. D. Jochems, J. Wirth Sargent* and *C. Edward Murray*, all of Wichita, for the appellant.

*B. F. Alford, R. L. NeSmith* and *William Histed*, all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:   This was an action in replevin to recover possession of an automobile to which plaintiff laid claim by virtue of a conditional sales contract governed by the laws of Arizona.

The cause was tried on pleadings and agreed statement of facts, supplemented by the depositions of two Arizona lawyers who had served as revisors of the Arizona statutes under legislative authority.

The facts were these:

On September 12, 1929, one Wm. A. Rivers, a dealer in automobiles in Maricopa county, Arizona, sold to his wife, Mrs. Bertha Rivers, a De Soto car. The consideration was $447.68 in cash, and balance of purchase price to be paid in eighteen monthly installments of $54.32 each. A conditional sales contract dated September 12, 1929, was executed. It contained the usual recitals of such instruments—that title should not pass until all payments were made, that the chattel should not be removed from Arizona "(or from the county in which this contract may be filed)" without the written consent of the seller, and that the seller or his agent might take possession of the car for any default of the purchaser, and that the seller's rights under this contract were likewise vested in his assignee.

On the same day, September 12, 1929, this conditional sales contract was assigned to the plaintiff herein, and it was filed for record in Maricopa county on September 26, 1929, *fourteen days* after its execution.

Two payments were made on the contract. Mrs. Rivers was informed that it had been paid in full and delivered the car to her husband, who disposed of it outside the state of Arizona.

In some way not shown the car came into the hands of one Freeman, from whom this defendant acquired it on March 14, 1930, by an exchange of cars and payment of $575 to boot.

In this action, after a jury was impaneled, it developed that the issue was one of law merely, the jury was discharged and judgment was entered in favor of defendant. The correctness of that decision depends upon the proper interpretation of the Arizona statute, pertinent parts of which read:

"Every provision in a conditional sale reserving property in the seller after possession of the goods is delivered to the buyer, is valid as to all persons, except as hereinafter otherwise provided; it is void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof be filed as hereinafter provided; *and is void as to all persons except the buyer* unless such contract or copy is so filed within ten days after the making of the conditional sale." (1928 Revised Code Arizona, § 2890.) (Italics ours.)

"The conditional sale contract or copy shall be filed in the office of the county recorder in the county in which the goods are first kept for use by the buyer after the sale; . . ." (Id., § 2891.)

This statute as originally enacted in 1919 (Sess. Laws Ariz., ch. 40) so far as here pertinent in title and text reads:

"An act concerning conditional sales and to make uniform the law relating thereto.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Section 4. (Condition Sales Valid Except as Otherwise Provided.) Every provision in a conditional sale reserving property in the seller after possession of the goods is delivered to the buyer, shall be valid as to all persons, except as hereinafter otherwise provided.

"Section 5. (Conditional Sales Void as to Certain Persons.) Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale.

"Section 6. (Place of Filing.) The conditional sale contract or copy shall be filed in the office of the county recorder in the county in which the goods are first kept for use by the buyer after the sale. . . ."

Under authority of the Arizona legislature (1925 Sess. Laws Ariz., ch. 35) the statutes of that state were codified. The uniform conditional sales act was rewritten, sections 4 and 5 being merged. The words which we have italicized in the present statute as quoted first above do not appear in the text of sections 4 and 5 of the act of 1919.

The legal question of present concern is whether the recording of the conditional sales contract is of any validity as against this defendant since it was not recorded until fourteen days after the conditional sale was made and the contract executed. The statutory time given in which to record the instrument, and within which time the conditional vendor is or may be protected without recording, is ten days. This contract was recorded long before Rivers disposed of the automobile covered by its terms, and about six months before defendant acquired any interest in it. But appellee insists on the sweeping potency of that provision of the statute which declares that such a sales contract "is void as to all persons except the buyer" unless such contract or a copy is so filed (in the office of the proper county recorder) within ten days after the making of the conditional sale.

No Arizona decisions on this precise point are cited by counsel and we have found none by our own research. All we can glean from a perusal of the Arizona cases is that the supreme court of that state invariably speaks of the statute as the "uniform conditional sales act." (*McArthur Bros. Mer. Co. v. Hagihara,* 22 Ariz. 100, 107; *O. S. Stapley Co. v. Rogers,* 25 Ariz. 308; *Bradshaw v. Kleiber Motor*

*Truck Co.,* 29 Ariz. 293.) The depositions of two Arizona lawyers who served as codifying commissioners do not greatly assist. Commissioner Struckmeyer deposed:

"The language in paragraph 2890 was carefully considered and necessarily being the language used by members of the bar who sought exactitude of language in the revision, the language of section 2890 speaks for itself. My own reason which motivated the employment of the particular language now found in the present section was to compel vendors, or rather the sellers, to record their conditional sales contracts within ten days from the date of sale under the penalty of having it declared void as to all persons except the buyer."

But that purpose is obvious in the text of the act without the deposition of the learned commissioner. What we need to determine is whether the failure to record within ten days renders the instrument altogether nugatory, so that even after it is recorded it cannot be the basis of a legal right against persons who afterwards acquire their interest in the chattel which is the subject matter of the conditional sale. In other words, does this instrument which the holder failed to have recorded within ten days but which was recorded in fourteen days have any legal potency whatsoever? Does it impart notice to parties who acquire an interest in the property covered by the instrument after the instrument is recorded?

Having no light on this question from the Arizona decisions which would govern this contract under the rule of *lex loci contractu,* we would naturally turn to our own, but this state has not yet adopted the uniform conditional sales act. Our statute on that subject is very brief (R. S. 58-314, 58-315), and simply provides that conditional sales contracts have the same potency as chattel mortgages and upon the same conditions. Our chattel mortgage statute provides:

"Every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, *shall be absolutely void* as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, *unless the mortgage* or a true copy thereof *shall be forthwith deposited* in the office of the register of deeds of the county in which the mortgagor resides, if the mortgagor be a resident of this state; but if the mortgagor does not reside in this state, then the mortgage shall be recorded in the county in which the mortgaged property is situated at the time the mortgage is executed." (R. S. 58-301.)

In *Youngberg v. Walsh,* 72 Kan. 220, 83 Pac. 773, a bill of sale intended to operate as a chattel mortgage was executed on June 11, 1902, but was not recorded until November 2, 1903. Another mortgage on the same chattels was executed to a third party on November 21, 1903, and promptly recorded. In the litigation which followed between the rival mortgagees the literal language of the statute was invoked to vitiate the claim of the holder of the older mortgage because his mortgage had not been "forthwith deposited in the office of the register of deeds." Its deposit for filing had been delayed from June 11, 1902, until November 2, 1903. Citing and quoting from earlier cases, this court held that although a mortgage is invalid while withheld from record it becomes valid whenever it is recorded. In the opinion it was said:

"The rule has become settled in this court that an unrecorded mortgage, although void for some purposes, becomes valid whenever recorded, and of the same force and effect thereafter as a new mortgage then executed and recorded. (*Utley v. Fee,* 33 Kan. 683, 7 Pac. 555, and cases cited *supra.*) The failure of Walsh to place his bill of sale upon record was therefore immaterial, as to the Herron mortgage, for the reason that when the latter was taken the Walsh bill of sale was on record." (p. 227.)

In *Geppelt v. Stone Co.,* 90 Kan. 539, 135 Pac. 573, it was held:

"Section 5237 of the General Statutes of 1909 [Kansas conditional sales act] suspends the force of a provision in a contract of sale of personal property reserving title in the vendor, and renders the sale absolute so far as innocent purchasers and creditors of the vendee are concerned until the contract is filed for record." (Syl. ¶ 7.)

But we would not press too closely whatever analogy there may be between our local statutes and the uniform conditional sales act of Arizona. In his helpful commentaries on conditional sales (2A U. L. A. 73) Dean Bogert says:

"Do the chattel mortgage recording acts apply to conditional sales? In the days when the conditional sale was a comparatively new institution, and few filing statutes specifically applicable to it had been adopted, it was urged that the conditional sale was identical in effect with the chattel mortgage and that the chattel mortgage recording statutes, existing very generally, should be applied to conditional sales on the theory that such contracts came within the spirit of the chattel mortgage recording acts. It would have saved a great deal of time to litigants, judges and legislators had this argument been accepted. The period during which litigation showed the inequity of holding conditional sales good without recording would not have been necessary. In the end the majority of legislatures have applied the equivalent of the chattel mortgage recording provisions to the conditional sale, but they have done it by the enactment of a new, separate statute in most cases."

Sections 4, 5 and 6 of the Arizona statute as enacted in 1919 are identical in text and terms with the provisions of the uniform conditional sales act drafted by the national conference of commissioners on uniform state laws. (2 U. L. A. 6, 9, 10.) The merging of sections 4 and 5 in the Arizona Revised Code of 1928 constituted no substantial departure from the uniformity intended by those concerned with the adoption of uniform state laws. The additional words in the Revised Code of 1928 seem to be merely a simplification of what ought to be clear enough from the other language of the statute and the general run of contemporary decisions that a conditional sales contract binds nobody but the original parties unless and until it is recorded, and the holder is given ten days in which to get that done. In 2 U. L. A. 9, it is said:

"Under the statute the contract is valid for ten days without filing. It was thought unwise to require the seller to file immediately. The seller's office may be far distant from the filing district. He should have a reasonable time to mail his papers and get them filed. *A filing after ten days from the date of the making of the contract of course protects the seller against all subsequent purchasers or creditors who buy or levy on the goods.*" [Italics ours.]

In 2A U. L. A. 90, 91, it is said:

"What is the effect of filing or recording after the statutory period? Is such action by the seller of no effect, or does it operate as constructive notice to all parties who subsequent to the record attempt to acquire rights in the goods from the conditional buyer, either as his subvendees or his creditors? In Georgia the construction has been that the requirement that the seller file within thirty days means that for thirty days he does not need to file, and that thereafter his reserved title is apt to be cut off by creditors and purchasers from the buyer, unless the seller does file. Filing after thirty days is not treated as a nullity, but its effect is restricted to preserving the rights of the conditional seller against claimants under the buyer whose rights accrue after the filing. *Holland v. Adams,* (1898) 103 Ga. 610, 30 S. E. 432; *Twin Theater Co. v. Liquid Carbonic Co.,* (1910) 134 Ga. 460, 67 S. E. 1033. But the Washington courts have taken a contrary view. They have held a filing after the ten-day period allowed in that state to be void. If the record is not made within ten days after delivery of the goods, it is as if no record had been made. Subsequent dealers with the goods are not charged with notice of such delayed record. (*Chilberg v. Smith,* [1909] 174 Fed. 805, 98 C. C. A. 513; *American Multigraph Sales Co. v. Jones,* [1910] 58 Wash. 619, 109 Pac. 108. . . .)

"Since the uniform conditional sales act allows ten days within which to file the contract, these Georgia and Washington decisions are of interest in the construction of the uniform act. It is submitted that the Georgia cases have the better of the argument. The object in permitting the seller a short time within which to file his contract is to allow for delays necessarily occurring

after the delivery of the goods or the making of the contract. The contract may have to be sent by a local office to a main office for approval, or may have to be mailed from the place where the contract was made to a distant place for record. Because of the practical hardship in some cases occasioned by requiring immediate record, the seller is given protection in his reserved title for a short time without any record. The purpose of this ten-day provision is not to penalize the seller if he does not file within a short time, but to protect him a short time without filing. Creditors of and purchasers from the conditional buyer are not harmed by a delay in filing on the part of the seller, if there is filing before the rights of the creditors or purchasers accrue. The purchasers and creditors have a right to demand that there shall be a record at the time they buy or acquire a lien, but they have no right to complain if the record was made twenty days after the delivery of the goods, instead of ten days, so long as it was made prior to their acquisition of a claim against the goods."

The more recent cases under the uniform conditional sales act generally hold the view that when the sales contract is filed it is good against parties whose interest is acquired thereafter. Thus in *Morey & Co. v. Schaad*, 98 N. J. L. 799, the official headnotes read:

"1. The provisions of section 5 of the uniform conditional sales act (Pamph. L. 1919, p. 461) that the reservation of property in the seller shall be void as to a creditor of the buyer who acquires a lien by attachment or levy, without notice of such reservation, unless the contract of sale or a copy is filed within ten days after the sale, are based upon the theory of actual notice of the making of the contract, or of constructive notice by filing it.

"2. Where a contract of conditional sale of goods was not filed within the statutory period of ten days, but was filed afterwards, and a creditor of the purchaser caused a writ of attachment to be issued against the goods after the contract was filed, the conditional sale was not void as against such attaching creditor."

In *Bent v. Weaver*, 106 W. Va. 164, it was held that where a truck was covered by a conditional sales contract which was not recorded within ten days in conformity with the uniform conditional sales act, but which was recorded at a later time, the rights of the conditional sales contract holder were upheld as against a creditor of the purchaser of the truck who levied upon it after such belated recording.

To the same effect were: *Firestone Tire and Rubber Co. v. Cross*, 17 F. 2d 417; *In re Guild, Bloomfield & Jensen*, 51 F. 2d 818.

In *R. P. Andrews Paper Co. v. Southern S. F. Co.*, 46 App. D. C. 84, the issue of law turned upon the construction of a local conditional sales act similar in principle to the uniform conditional sales

act, and it was held that the failure to record the conditional sales contract within ten days after its acknowledgment accrues only to the benefit of existing creditors of the vendee and not to debts accruing after its record.

In the case of *National Cash Register Co. v. Lesko,* 77 Conn. 276, the court discussed the nature of the contract of conditional sale under the conditional sales act of that state. The syllabus gives the key to the interpretation of such statutes:

"The real purpose of requiring a record of such sales to be made is to protect those who, because of the vendee's visible possession and apparent ownership, may be led to believe him to be the actual owner of the property."

Our time will not permit us to pursue this interesting subject further. We discern nothing in the text of section 2890 of the Revised Code of Arizona of 1928 which requires or persuades us to depart from the general trend of decisions we have explored as above; therefore, in accord with the best light available, we hold that when the conditional sales contract covering the automobile in question was recorded in Maricopa county, Arizona, it was good as against defendant and his predecessors in title, whoever they were, whose interest in it originated long after the contract was in fact recorded.

The litigants do not question the binding force in Kansas of a conditional sales contract recorded in Arizona state where the contract was made and where the chattel property constituting its subject matter—the automobile in question—was situated at the time; but on that point see: *Handley v. Harris,* 48 Kan. 606, 29 Pac. 1145, syl. ¶ 3; *National Bank v. Massey,* 48 Kan. 762, 30 Pac. 124; Notes in 57 A. L. R. 702 *et seq.*

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for plaintiff.