COMMERCIAL CREDIT CORPORATION, Appellant, v. INTERSTATE FINANCE CORPORATION, Appellee.

No. 46640.

APRIL 3, 1945.

REHEARING DENIED JUNE 22, 1945.

Kenline, Roedell, Hoffmann & Reynolds, of Dubuque, for appellant.

Robert W. Clewell and Smith, O'Connor & Thomas, all of Dubuque, for appellee.

WENNERSTRUM, J.— Plaintiff brings an action for conversion by reason of the taking and subsequent sale of eight new automobiles by the defendant upon which the plaintiff had unrecorded conditional-sales contracts and trust receipts for the purchase price thereof. The defendant corporation made a subsequent loan upon the automobiles covered by plaintiff's conditional-sales contracts. At the conclusion of all the evidence the trial court sustained defendant's motion for a directed verdict on the theory that the evidence conclusively showed as a matter of law that the defendant was without knowledge or means of knowledge of plaintiff's rights. The plaintiff's motion for a new trial was overruled and thereafter judgment was entered against the plaintiff for costs. It has appealed.

The appellant and appellee are both corporations engaged in the wholesale financing of new cars, as well as the financing of retail sales made by automobile dealers. They were both engaged in this type of business in northeastern Iowa during the years 1936, 1937, and 1938 and each corporation had a branch office in Waterloo, Iowa. Walt Merritt was a retail automobile distributor at Oelwein, Iowa. The record discloses that the appellant had heretofore financed Merritt in the wholesale purchase of automobiles and also his retail sales during the years 1936 and 1937. It is further shown that between October 5th and November 23, 1937, plaintiff purchased eight new Dodge and Plymouth cars from the Chrysler Corporation at Detroit, Michigan. The appellant corporation received bills of sale for these cars and directed that they be shipped to Merritt at

Oelwein. It is further shown that Merritt executed notes and conditional-sales contracts to the appellant for the purchase price of the cars and also trust receipts. The conditional-sales contracts and trust receipts were not recorded.

The appellee corporation, as previously stated, had an office in Waterloo which was in charge of George J. O'Donnell, as branch manager. It is shown that on November 22, 1937, Merritt contacted O'Donnell at Waterloo and sought a loan on four new cars which he had in his possession at Oelwein. O'Donnell, on behalf of the appellee corporation, loaned Merritt money on the cars and Merritt then executed notes to the appellee for the agreed amount and gave a chattel mortgage upon the cars. One of these four cars was erroneously described. A subsequent mortgage and note were thereafter given on November 30, 1937, correctly describing the previously incorrectly described car. It is further shown that on January 3, 1938, Merritt again sought and obtained a loan through O'Donnell and the appellee corporation upon four more new automobiles that he had in his possession at Oelwein. He executed a note and a chattel mortgage on these cars to the appellee corporation. The record discloses that these eight automobiles upon which the appellee corporation made loans and which were covered by the chattel mortgages given the appellee corporation were the same automobiles as those covered by the appellant's prior unrecorded conditional-sales contracts and trust receipts. The conditional-sales contracts and trust receipts heretofore given the appellant corporation remained unpaid and unsatisfied.

The appellee corporation later took possession of the eight cars involved in the present litigation and sold them. The appellant corporation made demand upon the appellee for the value of the cars, which demand was refused. The appellant corporation then brought an action to recover the value of the eight automobiles and by reason of the directed verdict and the entry of a judgment for costs against the appellant this appeal has resulted.

As previously stated, at the close of all the evidence the appellee corporation presented a motion for a directed verdict which was in substance as follows: (1) That the record conclusively showed as a matter of law that defendant (appellee)

was without knowledge or means of knowledge of plaintiff's (appellant's) rights (2) that there was no evidence in the record from which the jury could find that the defendant (appellee) had any knowledge or means of knowledge of plaintiff's (appellant's) rights or (3) any information as to facts or circumstances sufficient to put defendant (appellee) on inquiry, which if prosecuted with reasonable diligence would lead to actual knowledge of plaintiff's (appellant's) rights and that (4) a verdict for plaintiff (appellant) would necessarily have to be set aside.

It is the contention of the appellant corporation that O'Donnell, the manager of appellee's Waterloo office, had such knowledge or information of facts which would put a reasonable and prudent person upon inquiry, and which, if prosecuted with ordinary diligence, would lead to actual knowledge of appellant's conditional-sales contracts and trust receipts. In support of this contention the appellant maintains that the record shows that O'Donnell, the Waterloo manager for the appellee corporation, had knowledge of the general practices of those engaged in automobile financing which would put him on inquiry and necessitate his making an investigation as to the manner in which the purchase of the cars involved in this litigation was originally financed. In this connection it is shown by the record that O'Donnell had been engaged in the automobile-finance business since 1928, first in Des Moines and then later in northern Iowa, in which territory the city of Oelwein was included. He had been employed by the appellant corporation as its district representative in northern Iowa for four years and during that time solicited new business for it and handled the necessary matters pertaining to the financing of automobiles. In 1933 O'Donnell left the employ of the appellant corporation and later became the branch manager for the appellee corporation at Waterloo. The city of Oelwein was a part of the territory serviced by the Waterloo office of the appellee corporation. O'Donnell testified that during his employment by various automobile-finance companies, which included the appellant, he became familiar with their respective methods of doing business. It is the contention of the appellant that the record shows that during the several

years prior to the incident that has resulted in this litigation there was a custom, usage, and practice of finance companies in northern Iowa of waiving recording of security instruments taken from dealers on any cars. There is evidence to the effect that recording was waived in fifty per cent of the cases, and that such waiver sometimes was one of the conditions of obtaining a dealer's business. It is the further claim of the appellant corporation that at the time Merritt asked for the loan on the eight automobiles O'Donnell knew: (1) That someone had paid for the cars (2) that Merritt had not paid for those cars himself (3) that Merritt's new car wholesale business had gone to O'Donnell's competitor (4) that appellant was the successful competitor handling Merritt's new car line and (5) that lack of prior recorded security instruments covering the same cars did not negative the existence of such prior unsatisfied instruments. It is the further claim that O'Donnell did not check the records in Fayette county, in which county Oelwein is situated, to determine whether there were recorded any prior security instruments covering the cars upon which the loan was to be made. It is further contended that a jury, if the case had been submitted to it for consideration, could have found the facts heretofore set out from the direct evidence and permissible inferences.

We are therefore presented with the question whether or not the court was justified in directing a verdict in favor of the appellee and thereafter in overruling appellant's motion for a new trial. We have not set out the extensive record which the appellant presents in connection with its effort to show that the witness O'Donnell had knowledge of the custom and usages which the appellant corporation maintains existed in northern Iowa in the financing of new cars, but we have set out the contentions made sufficiently to show the several claims of the appellant.

The statutory provision which has application to the question before us for consideration is found in section 10016 of the 1939 Code of Iowa:

"10016 Conditional sales. No sale, contract, or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any

464

creditor or purchaser of the vendee or lessee in actual possession obtained in pursuance thereof, without notice, unless the same be in writing, executed by the vendor and vendee, or by the lessor and lessee, acknowledged by the vendor or vendee, or by the lessor or lessee, and such instrument or a true copy thereof is duly recorded by, or filed and deposited with, the recorder of deeds of the county where the vendee or lessee resides if he be a resident of this state at the time of the execution of the instrument; but if he be not such a resident, then of the county where the property is situated at that time.''

█ It is not contended by the appellant that their conditional-sales contracts or trust receipts were recorded and their whole case is based on the theory that the custom and practices of finance companies doing business in northeastern Iowa, and particularly in and about Oelwein, were such that the appellee corporation was under obligation to make inquiries of the appellant corporation as to their interest in the automobiles covered by appellee's chattel mortgage.

A case somewhat applicable to the one here presented is that of Brenton v. Bream, 202 Iowa 575, 576, 577, 210 N. W. 756, 757, where it is stated:

''The nature of the debt for which the chattel mortgage is given is immaterial. Whether the debt is for rent or for money borrowed, whether the debt has fully accrued or is accruing, in either case the chattel mortgage, or its equivalent securing it, must be filed or recorded, to be of any validity against subsequent purchasers without notice. Sioux Valley St. Bank v. Honnold, 85 Iowa 352.

''Plaintiff argues that all apartment leases in Des Moines give a lien for the rent, and that the mortgagee was bound to know that fact; that it knew there was a lease, and was chargeable with notice that the rent was made a lien upon the exempt property. In effect, therefore, plaintiff argues that judicial notice must be taken of the alleged fact that the rent for apartments in Des Moines is secured by written lease, making it a lien upon exempt property. We can conceive of no legal reason, and know of no authority, that would sustain this contention.

"It is argued further that, as the mortgagee knew that the mortgagors were tenants, occupying under a lease, if they did not make inquiry about its contents, they designedly abstained from doing so; and that they are chargeable with notice of its contents, as respects the lien. To sustain this argument would be, in effect, to hold the proposition that everyone must be assumed to know that a lease of an apartment is executed by both husband and wife, and makes the rent a lien on their exempt property. The lease may or may not be so executed or drawn. The law provides a method of giving constructive notice by filing or recording. Lessors are not excepted from the operation of such provision. They may thereby fully protect themselves."

A case which comments upon the degree and nature of the proof required to show that a party had knowledge of an unrecorded mortgage is found in Weare & Allison v. Williams, 85 Iowa 253, 261, 52 N. W. 328, 331:

"It may be conceded that the law is that, if the company, before making the loan, was in possession of such facts as would put a reasonably prudent man upon inquiry, it would be held to be bound by whatever such inquiry would have disclosed. English v. Waples, 13 Iowa 57; Allen v. McCalla, 25 Iowa 464; Zuver v. Lyons, 40 Iowa 510; Jones v. Bamford, 21 Iowa 217; Wilson v. Miller, 16 Iowa 111. And that such notice, if it came to it before it had acted in good faith and parted with its money, would charge it with actual knowledge of all it could have ascertained by such inquiry. Sillyman v. King, 36 Iowa 207; Kitteridge v. Chapman, Id. 348; Norton v. Williams, 9 Iowa 528. It is impossible to lay down an inflexible rule as to what would be sufficient in all cases to charge one with notice of another's rights. Every case must be judged upon its own facts. * * * As is well said in Wilson v. Miller, 16 Iowa 111: 'Vague rumors and indeterminate suspicions will not answer; nor will general assertions, made by strangers to the title, and resting on hearsay, be sufficient. The facts must be such as to bind the conscience of the party, to alarm him, and put him upon such inquiry as, if prosecuted, would lead him to a knowledge of those rights with which it is proposed to affect him.' "

In 39 Am. Jur. 241, section 15, we find this statement:

"Notice of facts putting one on inquiry is notice of the facts which such inquiry would have revealed. It is impossible, however, to lay down a general rule by which to determine what facts are sufficient to excite inquiry. Each case must, to a great extent, be decided on its own facts. It has been said that notice sufficient to put a person on inquiry need not contain complete information on every fact material to his knowledge. To charge one with notice, however, the facts must be such as ordinarily to excite inquiry with reference to the particular fact which the inquiry is designed to elicit."

In section 16, at page 242, of the last-cited authority, there is set out the following statement:

"Mere rumors are neither notice nor the groundwork for the required inquiry which will charge a person with knowledge of what inquiry would have revealed. It is also a settled principle that vague reports of, or information given by, strangers are insufficient to operate as notice."

In section 17, at page 242, of this same authority, it is stated:

"There is a wide difference between suspicion and knowledge. A person may often suspect in matters of business what in fact he does not believe, and experience teaches that he will sometimes suspect what he has no reason to believe even when the evidence to excite suspicion is so slight that he himself would scorn to acknowledge it as the basis of his action in the premises. Accordingly it is the rule that evidence that there existed a suspicion in a person's mind is not equivalent to evidence of notice."

Under the record as presented in this case a jury would not be justified in finding that the appellee corporation, through its branch manager, had notice of the unrecorded conditional-sales contracts and trust receipts held by the appellant. It is our further conclusion that a jury would not be justified in finding that the practices and customs which the appellant claims were in existence were such as would put a reasonably prudent person upon inquiry. We do not believe that these claimed customs and usages would require it to make further inquiry to ascertain as to the claimed lien of the appellant corporation.

■ The record conclusively shows that O'Donnell, appellee's manager in Waterloo, denied any knowledge of the unrecorded conditional-sales contracts and trust receipts. The burden was upon the appellee in this case to allege and prove that it was a subsequent purchaser without notice. Loranz & Co. v. Smith, 204 Iowa 35, 42, 214 N. W. 525, 53 A. L. R. 662; State Sav. Bk. v. Universal Credit Co., 233 Iowa 247, 254, 8 N. W. 2d 719, 724. Ordinarily, as stated in Loranz & Co. v. Smith, supra, only affirmative evidence will avail the original mortgagee or claimant on the question of notice. The appellant presented no such affirmative evidence but based its contention that there was a jury question by reason of custom and usage which would require the appellee corporation, through its representatives, to make inquiry as to the appellant's unrecorded lien. We are not disposed to hold, under the facts in this case, that the representatives of the appellee corporation were given such information which would put a reasonable man upon inquiry and which, if prosecuted with ordinary diligence, would have resulted in a discovery of the appellant's rights under the unrecorded instrument.

■ The record is undenied that the appellee corporation did not have actual notice. There may have been negligence on its part in failing to make inquiry. Negligence is immaterial unless possibly it amounts to fraud. Moline Plow Co. v. Braden, 71 Iowa 141, 32 N. W. 247; State Sav. Bk. v. Universal Credit Co., supra, 233 Iowa 247, 255, 8 N. W. 2d 719, 725.

We have examined the several Iowa cases called to our attention by the appellant relative to the matter of custom and usage but we are satisfied that these cases and our statements therein made are not applicable to the facts in the present case. Upon a review of the entire record we have concluded that the trial court was correct in its ruling and direction of a verdict for the appellee corporation and that it should be affirmed.— Affirmed.

HALE, C. J., and MULRONEY, MILLER, MANTZ, GARFIELD, and OLIVER, JJ., concur.

SMITH, J., takes no part.