401 P.2d 790

MASSEY–FERGUSON, INC., a corporation,
Plaintiff-Appellant,

v.

Dennis TALKINGTON, Defendant-
Respondent,

v.

Homer BROOKS, dba Brooks Used Cars,
Third-Party Defendant.
No. 9489.

Supreme Court of Idaho.
May 3, 1965.

Dunlap, Rettig & Rosenberry, Caldwell, for appellant.

Gigray, Boyd & Downen, Caldwell, for respondent.

TAYLOR, Justice.

April 16, 1962, the Fox Equipment Company of Kinsley, Kansas, entered into a title retaining, conditional sale contract for the sale of a 1962 Massey-Ferguson tractor and loader to one Simpson. The contract was executed and the tractor and loader were delivered at Kinsley, Kansas. The contract provided for payment of the installments of the purchase price at the office of the Fox Equipment Company, in the city

of Kinsley; and that the property sold "will be kept and located in Kinsley," in Kansas. The purchase price was $3,790. Credit was given for a cash payment of $1,426, leaving a balance, including finance charge, of $2,793.03. The contract provided for payment of the balance in 36 consecutive monthly installments. The first installment became due June 1, 1962, and was the only installment paid.

On the date of the execution of the contract, April 16, 1962, the Fox Equipment Company assigned the contract to the plaintiff (appellant), and it was filed in the office of the register of deeds of Edwards county, Kansas, May 14, 1962.

Defendant (respondent) testified that Simpson had a service station and restaurant at Notus, in Canyon county, Idaho, operated by his son; that Simpson "was living in a motel, most of the time, himself, here, and at Kansas. He was not here very much of the time"; that Simpson had been engaged in buying automobiles, trucks and farm implements in Kansas, transporting them to Idaho for resale; and had advised defendant that he could sell and deliver to him a tractor and loader similar to that described in the Kinsley contract for "around $3,000." Subsequently, on April 30, 1962, Simpson offered to sell the tractor and loader involved to defendant for $2,750. Defendant accepted the offer and gave Simpson his check for $600 and arranged to go with Simpson to a bank the next day to arrange financing of the balance of the purchase price. That evening Simpson discovered that defendant's check, by mistake, had been drawn for $6 instead of $600, and advised defendant by telephone that he had sold the tractor and loader to one Homer Brooks, a used car dealer in Caldwell, and that defendant could complete the deal with Brooks.

The next day, May 1, 1962, Brooks and defendant went to the office of The Idaho First National Bank in Nampa, where a conditional sale contract was executed for the sale of the tractor and loader by Brooks to defendant. Defendant made a down payment to Brooks of $600. The contract provided for payment of the balance of $2,433.23, which included $283.23 time-price differential, in five semiannual installments. The contract was then assigned by Brooks to the bank.

Early in July, 1962, plaintiff discovered that defendant was in possession of the tractor and loader, and commenced this action July 17, 1962. The property was taken from the possession of the defendant by the sheriff on July 24, 1962, and delivered to plaintiff July 31, 1962. Defendant answered, claiming title and right of possession by virtue of his contract with Brooks, and claimed damages for loss of the use of the property and for its depreciation in value. Brooks and the bank

were made third party defendants. However, pursuant to stipulation of counsel, the trial was limited to the issues raised between plaintiff and defendant. As thus limited, the cause was tried to the court without a jury. Judgment was entered in favor of defendant and against plaintiff for the possession of the tractor and loader, and for $1,357.50 damages. Plaintiff brought this appeal from the judgment.

Plaintiff by its assignments of error, raises the sufficiency of the evidence to sustain the court's finding that defendant was an innocent purchaser, without notice of plaintiff's rights under its contract; the failure of the court to apply the presumption that the law of Kansas was the same as that of Idaho in the absence of pleading and proof of the Kansas law; and urges that the damages awarded were not sustained by the evidence.

Plaintiff calls attention to evidence that the defendant knew the price which he paid to Brooks was less than the local retail price of such equipment. On cross-examination, defendant testified that the local price would have been as much as $700 to $1000 more than he paid. Defendant also testified that sometime prior to his agreement to purchase the equipment from Simpson, Simpson had taken defendant to the office of the Budget Finance Company in Boise, ostensibly to arrange for financing of the purchase of the equipment by defendant.

There defendant and Simpson were advised that the finance company had received a bank draft from Kinsley, Kansas, "for payout on this tractor and loader for $3750.00." Defendant refused to consider purchase of the equipment at that price, and nothing further was done until Simpson later offered to sell the property to defendant for $2,750.

Defendant further testified that he had no notice of an outstanding title contract against the tractor and loader, and that the first time he "knew of any possibility that there might be difficulty as to the title to it" was early in July when plaintiff's representative called at his farm and advised him of plaintiff's claim. Defendant's conduct at that time tends to indicate that in buying the equipment he acted in good faith and without notice. A Mr. York, plaintiff's representative, called at defendant's farm July 3, 1962, in connection with other business between plaintiff and defendant. During the course of their conversation, defendant volunteered to Mr. York that he had made an advantageous purchase of a tractor and loader, and readily assented to Mr. York's request to examine the implements. York took the serial numbers from the tractor and loader, and later came back and advised defendant of plaintiff's title and asked for payment of the contract or possession of the equipment.

One Max Luby, a used car dealer in Caldwell, testified that he saw the tractor and loader, mounted on a truck, at Notus on the 11th or 12th of April, 1962; that Simpson being absent, he took the tractor and loader to his sales lot and stored them there until Mr. Simpson returned; that "as far as I know, he was in Kansas"; and that he delivered the tractor and loader to Simpson on the 27th or 28th of April, 1962. The court found that Luby saw the tractor and loader at Notus, Idaho, on April 11th and 12th, 1962, and on April 28, 1962, "delivered them to Claud Simpson, who had previously shipped them from Kansas to Idaho."

The effect of this testimony and finding is not clear. In this connection we note the testimony of the defendant that Simpson had called him from Kinsley, Kansas, early in April, offering to bring to him a tractor and loader for around $3,000; that at that time Simpson put a man on the phone who represented to defendant that he was the Massey-Ferguson agent at Kinsley, and who told defendant that Simpson had so dealt with him for the tractor and loader that Simpson could resell the equipment and give clear title thereto. The total effect of such testimony and finding would be its tendency to indicate that the tractor and loader were actually delivered to Simpson in Kinsley prior to the execution of the conditional sale contract held by plaintiff.

Plaintiff's witness Martin testified that the tractor and loader were removed from Kansas without plaintiff's permission.

■■■ Under the foregoing evidence the issue as to whether defendant had notice of plaintiff's title, or information which would put a reasonable man on inquiry, which, if pursued, would lead to discovery of plaintiff's title, was one to be resolved by the trier of the facts. The court having found that defendant was an innocent purchaser for value and without notice, and such finding being supported by competent and substantial evidence, it is binding on this court. I.C. § 13–219. The evidence establishes that defendant was a purchaser for value. 77 C.J.S. Sales § 290. The fact that he paid less than the local retail price for the property did not affect his status as a purchaser for value, and could be considered only on the issue of his good faith and notice of infirmity in the title of Simpson or Brooks.

In Commercial Credit Corp v. Interstate Finance Corp., 236 Iowa 459, 18 N.W.2d 178, 159 A.L.R. 663 (1945), the Iowa court said:

"Ordinarily * * * only affirmative evidence will avail the original mortgagee or claimant on the question of notice." 18 N.W.2d at 182, 159 A.L.R. at 669.

■■■ The information which defendant received that a bank draft had been sent by

a bank in Kansas to the Budget Finance Company in Boise for "payout" on the equipment would not, standing alone, be sufficient notice of the existence of a title retaining contract. The evidence does not reveal the drawee named in the draft. If it be assumed that Simpson was the drawee, the draft might be taken as notice that Simpson owed money in Kansas. If it be considered that the knowledge that Simpson owed money on the tractor and loader, would be sufficient to warn defendant that the title might be held as security by someone in Kansas, inquiry by the defendant at the office of the register of deeds in Edwards county, Kansas, would have revealed that no title retaining contract had been filed or recorded, affecting such title. Plaintiff's conditional sale contract was not filed in that office until May 14, 1962, thirteen days after defendant had made the purchase from Brooks. It is also noted that the amount demanded by the draft was greater than the balance owing upon plaintiff's title contract.

In State Sav. Bank of Sharpsburg v. Universal Credit Co., 233 Iowa 247, 8 N.W.2d 719 (1943) the Ford Motor Company had shipped to Bray Motor Company, retail Ford dealer at Bedford, Iowa, a shipment of automobiles and received back from the dealer a conditional sale contract by which Ford Motor Company retained title to the automobiles. The bill of lading listed the automobiles with factory number and price. On the back thereof was the conditional sale contract. This document was sent to the plaintiff's bank with instructions to collect $31.04 and to secure the signature of the Bray Motor Company to the conditional sale contract. The bank made the collection, secured the execution of the contract and returned it to the Ford Motor Company. That company then assigned the contract to defendant Universal Credit Company. The contract was not filed nor recorded. Thereafter, the dealer sold one of the automobiles to one of its salesmen on a conditional sale contract, which the dealer assigned to the plaintiff bank. Upon default of the purchaser, the credit company took possession of the automobile and the bank brought action in replevin. The court held that the fact that the manufacturer's bill of lading and conditional sale contract were transmitted and executed through the agency of the bank was not notice to the bank of the unrecorded conditional sale contract, and that the question as to whether the bank was put upon notice which required it to make inquiry of the credit company concerning the dealer's title, was one upon which reasonable minds might differ and hence was for the jury. The court further said:

"Whether information is sufficient to put a purchaser or creditor on notice of an unrecorded instrument has been said to be a mixed question of law and fact. It is sufficient, if it would put a rea-

sonable man upon inquiry which would certainly lead to a discovery of the rights under said instrument." 8 N.W.2d at 724.

In that case the jury returned its verdict for the bank as a bona fide purchaser for value without notice, and the judgment thereon was affirmed.

In 1944 a second case was considered by the Iowa court involving the same parties and almost identical facts. State Sav. Bank of Sharpsburg v. Universal Credit Co., 234 Iowa 443, 12 N.W.2d 890 (1944). The jury in the second case returned its verdict against the bank on its claim that it was a bona fide purchaser without notice. The court again held that the issues as to notice and sufficiency of the information to put the subsequent purchaser on inquiry as to the outstanding title, were questions for the jury, and affirmed the judgment entered upon the jury's verdict. Referring to the earlier case, the court said:

"We have, therefore, a recent pronouncement of this court which applies to the facts in this case and establishes that these two questions were matters to be determined by the jury. It so happens that the jury in the former case rendered a verdict for plaintiff, while another jury under the facts submitted in this case determined in favor of defendant. Under these circumstances it is not within our province to interfere with the verdict unless we find that upon submission of the case there was such error as would require a reversal. In actions such as this we are limited to the correction of errors." 12 N.W.2d at 892.

In Gordon v. Loer, 57 Idaho 269, 65 P.2d 148 (1937), this court held that a buyer with actual notice is not a bona fide purchaser in a case where recording was required, and that the issue as to notice was for the jury.

■ In this case the law of Kansas governed the validity and construction of plaintiff's contract, 78 C.J.S. Sales § 568, and the effect of failure to file it in the office of the register of deeds in the county where it was executed and where the tractor and loader were located. 78 C.J.S. Sales § 578. Mohn v. Zahner Mfg. Co., Mo.App., 319 S.W.2d 18 (1958); J. R. Townsend Co. v. New Hampshire Auto Co., 104 N.H. 81, 178 A.2d 688 (1962). Plaintiff produced the evidence of the filing of the contract on May 14, 1962, by the testimony of W. R. Westphal, register of deeds of Edwards county, Kansas. Through this witness the plaintiff further proved the recording law of Kansas as follows:

"A (Referring) 'Conditional Sales. 58–314. Recordation. That any and all instruments in writing or promissory notes now in existence or hereafter executed evidencing the condi-

tional sale of personal property, and that retains the title to the same in the vendor until the purchase price is paid in full, shall be void as against innocent purchaser, or the creditors of the vendee, unless the original instrument, or a true copy thereof, shall have been deposited in the office of the register of deeds of the county wherein the property shall be kept, and shall be entered upon the records the same as a chattel mortgage, and when so deposited shall remain in full force and effect until the amount of the same is fully paid, without the renewal of the same by the vendor; and any conditional verbal sale of personal property reserving to the vendor any title in the property sold shall be void as to creditors and innocent purchasers for value.' "

Our statute, I.C. § 64-801, provides that conditional sale contracts "shall vest such title in such vendee as to subsequent purchasers and encumbrancers of such property in good faith and for value" unless filed in the office of the county recorder prior to subsequent purchases or encumbrances. I.C. § 64-805 provides:

"This chapter does not apply to a conditional sale of household goods and furniture, musical instruments, motor vehicles, farm implements and machinery, property exempt from attachment or execution, nor to any con-

ditional sale where the consideration is less than $100.00."

■ Plaintiff contends that since there was no proof of any exception to the application of the Kansas statute, it should be presumed that the Kansas statute contained an exception, in cases involving farm implements, the same as our I.C. § 64-805. We do not find the presumption applicable. The plaintiff undertook to prove the Kansas law, and since it did establish a section of that law, all-inclusive in its terms, the presumption is rather that there was no other section of the Kansas law applicable to the questions in issue.

In Geppelt v. Middle West Stone Co., 90 Kan. 539, 135 P. 573 (1913), the court held that liens attaching before the recording of a title retaining contract were good as against such contract, and referring to the contrary contention, said:

"* * * This argument merely flies in the face of the statute which suspends the force of the provision in the contract of sale reserving title in the vendor and so renders the sale absolute, so far as innocent purchasers and creditors are concerned, until the contract is placed on record." 135 P. at 575.

See also: Commercial Credit Co. v. Gaiser, 134 Kan. 552, 7 P.2d 527 (1932); Bailey v. Baker Ice Machine Co., 239 U.S. 268, 36 S.Ct. 50, 60 L.Ed. 275 (1915); In re

Bell Motor Co. (8th Cir.) 45 F.2d 19 (1930).

■ Plaintiff contends the rule expressed in I.C. § 64-207; Brunette v. Idaho Veneer Co., 86 Idaho 193, 384 P.2d 233 (1963); Klam v. Koppel, 63 Idaho 171, 118 P.2d 729 (1941); Federal Land Bank v. McCloud, 52 Idaho 694, 20 P.2d 201 (1933); and Jordan v. Kancel, 188 Kan. 292, 361 P. 2d 894; should be applied here. The statute expressly preserves the operation of "recording acts" from the application of that rule. It is not applicable here.

■ The rule of comity expressed in Pacific Finance Corp. v. Axelsen, 84 Idaho 70, 368 P.2d 430 (1962) is not applicable in this case, for the reason that plaintiff's claim of title was not perfected in Kansas by timely filing of its conditional sale contract. Also, in the Pacific Finance case the Idaho buyer had actual notice of the title perfected under Utah law.

■ The court found defendant was damaged $450.00 in loss of the use of the tractor and loader. This item was amply supported by the evidence. As to depreciation, the court found:

"9. That defendant suffered damages as a result of depreciation in the value of the tractor and loader from the date they were taken into possession by the Sheriff of Canyon County, Idaho, until the date of the trial in the sum of $907.50; that the damages were determined by the Court in the following manner, namely: that the retail price of the tractor and loader at Caldwell, Idaho was $3,600.00 on May 1, 1962 at time of purchase; that on the date of trial, September 9, 1963 the reasonable value of said tractor and loader was $2,500.00; that the tractor depreciated from May 1, 1962 to September 9, 1963 in the sum of $1,100.00; that the defendant had said tractor in his possession from May 1, 1962 to July 24, 1962 for a period of 2 months, 27 days, during which time the tractor depreciated in the sum of $192.50; this sum subtracted from the total depreciation of $1,100.00 making the damages for depreciation in the sum of $907.50."

The tractor and loader were new and unused when delivered to defendant, May 1, 1962. He testified he commenced plowing with the tractor the next day, and that he continued to use the equipment as needed in his farming operations until possession was taken from him July 24, 1962. The testimony was that the equipment depreciated immediately upon being put to use. It then became a used unit and its market value declined seven to eight hundred dollars. Such evidence was not controverted. Thus, the record will support a finding of only $400 damage in depreciation of the equipment, $507.50 less than the amount allowed.

The cause is remanded with directions to the district court to reduce the amount awarded to defendant for damages to $850. As thus modified the judgment is affirmed.

Costs to respondent.

McQUADE, C. J., and KNUDSON, J., concur.

McFADDEN, Justice (dissenting):

It is my conclusion that the trial court erred in entry of judgment for the defendant-respondent. Briefly, the reasons for this conclusion are as follows:

The parties have considered the machinery the subject of the conditional sale contract entered into in Kansas, by appellant's assignor as vendor and Simpson as being "farm machinery". That it was farm machinery is sustained by the record, as respondent Talkington used this equipment for that purpose. I.C. § 64-801 requires that conditional sales contracts be recorded in the county where the property is located, otherwise the vendee has title as to subsequent purchasers and encumbrancers of such property in good faith and for value. I.C. § 64-805, however, makes inapplicable the other provisions of I.C. Ch. 8, title 64, as to farm implements and machinery.

I.C. § 64-207, states: " * * * where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, * * *."

This court has held that a seller of personal property can convey no greater title than he had, and it makes no difference that the purchaser had no notice and was ignorant of the existence of other parties in interest. Federal Land Bank v. McCloud, 52 Idaho 694, 20 P.2d 201; Brunette v. Idaho Veneer Co., 86 Idaho 193, 384 P. 2d 233.

Simpson at the time he entered into the contract with appellant's assignor, took only a conditional title. When he brought the equipment to Idaho, (contrary to the express provisions of the conditional sales contract,) he brought a conditional title with him—his title could not ripen into full ownership without making the payments provided by the conditional sales contract. In my opinion the failure to record this conditional sales contract is immaterial in the instant action, for as between Simpson and the Fox Implement Company (appellant's assignor), the contract was valid. When by subsequent transactions, Simpson sold the equipment to Brooks, and Brooks entered into the contract with respondent, all that Simpson could convey was the title he had, subject to the obligation to comply with the terms of the Kansas contract.

The contract respondent relies on for his title is one that was wholly completed within the State of Idaho; the parties to the

contract were within the jurisdiction of this state, and the machinery itself was here. Under the majority opinion, the law of Kansas, which requires the recording of a conditional sales contract for it to be valid as against subsequent purchasers and incumbrancers in good faith and for value, is being applied to a transaction that takes place in Idaho, between Idaho parties, with the property itself being in Idaho.

Respondent's title to this property should be judged on the basis of Idaho law. Marvin Safe Co. v. Norton (Sup.Ct.1886), 48 N.J.L. 410, 7 A. 418, 57 Am.Rep. 566. In that case a safe was purchased in Philadelphia under a title retaining contract. Under the Pennsylvania law such contract was invalid as against creditors of the purchaser or bona fide purchaser from him. After the purchase of the safe in Pennsylvania, the purchaser brought it to New Jersey and later sold it in New Jersey, to a third party for cash. The question arose as to whether the original vendor or the third party was entitled to the safe, and the Supreme Court of New Jersey held the original vendor prevailed. That court pointed out there were two transactions involved. At the time of the first transaction the safe was in Pennsylvania and the vendor had a security title. In New Jersey there was a second transaction in which the safe was purchased by an innocent purchaser. Applying the law of New Jersey, the law of the situs at the time of this second transaction, the court found that by that law the innocent purchaser secured no interest in the chattel as against the holder of the security title. It determined the rights acquired in the second transaction by the law of the situs at the time of that transaction.

In the instant case, there were also two transactions: the first in Kansas, under which appellant's assignor retained legal title, and Simpson acquired possession under the contract to pay, but no title as against the vendor. The second transaction, which took place in Idaho, involving Idaho residents with the property in Idaho should be governed by the Idaho law, the law of the situs of the second transaction, and under the Idaho law there is no requirement that such transaction be recorded to protect the title of a conditional vendor in farm machinery.

"The modern rule is that the law of the actual situs of the proeerty governs the validity of a transfer of movables." 15 C.J.S. Conflict of Laws § 18 d. (1).

"Whether a conveyance of a chattel which is in due form and is made by a party who has capacity to convey it is in other respects valid, is determined by the law of the state where the chattel is at the time of the conveyance." Restatement, Conflict of Laws § 257.

See also: United States F. & G. Co. v. Northwest Engineering Co., 146 Miss. 476,

112 So. 580, 57 A.L.R. 530 (1927), Annot.: 25 A.L.R. 1153, IIIc, at pg. 1168; 57 A.L.R. 535, IIIc at pg. 541; 148 A.L.R. IIIc at pg. 388.

In Van Ausdle Hoffman Piano Co. v. Jain, 39 Idaho 563, at 573, 228 P. 342, this court quoted from Knowles Loom Works v. Vacher, 57 N.J.L. 490, 493, 31 A. 306, 307, 33 L.R.A. 305–310, as follows:

"The *situs* of the property, and not the *lex loci contractus*, determines the validity of such sales. The contract in this case was made in New York, but the property was to be delivered, and was delivered, to and held by the purchaser, in this state. Great contention and uncertainty as to the title to personal property would be produced if purchasers and mortgagees were bound to ascertain whether the vendor or mortgagor acquired title in another state before they could contract with safety in reference to it. Judicial decision in this state has been hostile to such an interpretation of the law. Marvin Safe Co. v. Norton, 48 N.J.L. 410, 57 Am.Rep. 566 [7 Atl. 418]. Where the situs of personal property is in this state, it is subject to our statutory provisions in the adjudications regarding it in our own courts, in a suit to which a citizen of this state is a party. (Citing authorities). 'No one can seriously doubt that it is competent for any state to adopt such a rule in its own legislation, since it has perfect jurisdiction over all property, personal as well as real, within its own territorial limits. Nor can such a rule, made for the benefit of innocent purchasers and grantors, be deemed justly open to reproach of being founded in a narrow or a selfish policy.' Story, Confl. L. § 390). It seems clear that the New Jersey statute must dominate this controversy."

This court then quoted the case of Public Parks Amusement Co. v. Embree-McClean Carriage Co., 64 Ark. 29, 40 S.W. 582, as follows:

"Though a sale of chattels in Missouri, with reservation of title in the seller till payment of price, is void as to subsequent *bona fide* purchasers, unless evidenced by a writing, acknowledged and recorded, it is valid between the parties; and if the purchaser brings the property into Arkansas, and conveys it to a third person, the law of the latter state governs the conveyance, and such person acquir[es] no title as against the original seller, though the original contract was not recorded."

The judgment in the instant cause should be reversed.

SMITH, J., concurs in dissent.